# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| The NATIONAL FEDERATION OF THE BLIND OF ALABAMA, GAIL SMITH, JILL ROSSITER, and ERIC PEEBLES, *Plaintiffs*, vs. JOHN H. MERRILL *in his official capacity as Secretary of State of Alabama*, *Defendant*. | Case No.: _____ **COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

## INTRODUCTION

1. Plaintiffs the National Federation of the Blind of Alabama, Gail Smith, Jill Rossiter, and Eric Peebles bring this action to vindicate the right of individuals who are blind[1] or have print disabilities[2] to vote privately and independently by absentee ballot. Alabama's absentee ballot program requires voters with vision and print disabilities to secure another person's assistance to complete their absentee ballot. This requirement violates federal law.

2. Alabama is one of the top eight states in the country for its percentage of residents with vision impairments (3.3%).[3] This percentage exceeds the national average of 2.3%.

---

[1] For semantic convenience throughout this Complaint, the term "blind" is used in its broadest sense to include all persons with a vision impairment that substantially limits the major life activity of seeing.

[2] "Print disabilities" are all disabilities that interfere with a person's ability to read, mark, and handle printed paper documents. Those disabilities include vision disabilities, manual dexterity disabilities such as cerebral palsy, and other physical disabilities such as quadriplegia.

[3] Rehabilitation Research and Training Center on Disability Statistics and Demographics, *2020 Annual Disability Statistics Compendium* 22, https://disabilitycompendium.org/sites/default/files/user-uploads/Events/2021_release_year/Final%20Accessibility%20Compendium%202020%20PDF_2.1.2020reduced.pdf

3. Blind and print disabled Alabamians, like U.S. citizens across the country, are proud to exercise the duty, right, and privilege of voting for their elected representatives. Yet, when trying to vote in person, they face barriers in the form of transportation, untrained poll workers, and inaccessible voting technology.

4. While Alabama purports to make absentee voting available to voters who are blind or who have print disabilities, it falls well short of its promise and legal obligation to do so. The State excludes blind and print disabled Alabamians from its absentee voting system because its absentee ballots are transmitted, marked, and returned entirely on paper and are thus inaccessible to those who are blind or have print disabilities.

5. To vote privately and independently by absentee ballot, Plaintiffs and other voters with vision and print disabilities need an accessible electronic ballot that they can read and mark on their own computers or smart devices, using their own assistive technology. Accessible electronic ballots are available and widely used across the country.

6. In fact, Alabama already makes absentee ballots available electronically to citizens living overseas and citizens in the military. It also allows overseas and military voters to return their absentee ballots electronically. Thus, Alabama has the means to provide ballots electronically to, and accept marked ballots electronically from, voters with print and vision disabilities.

7. Alabama's exclusive reliance on paper ballots for non-overseas and military voters prevents blind and print disabled Alabama voters from participating in absentee voting with the privacy and independence afforded to voters without disabilities. The Alabama absentee voting program provides no alternatives to accommodate blind and print disabled individuals.

8. By requiring blind and print disabled voters to seek another person's assistance to complete a paper ballot, Alabama's absentee ballot system forces Plaintiffs to forfeit their right to vote privately and independently when voting absentee. Because individuals without disabilities may cast their votes by absentee ballot privately and independently, Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12131 *et seq.*, and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794 *et seq.*, require Defendant to provide individuals with disabilities—including Plaintiffs—an equal opportunity to do the same.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, because Plaintiffs' claims arise under the ADA and Section 504. In addition, the Court has jurisdiction over Plaintiffs' claims for declaratory relief pursuant to 28 U.S.C. §§ 2201–02.

10. Venue is proper in the Northern District of Alabama pursuant to 28 U.S.C. § 1391(b)(1) because a substantial part of the events and omissions that give rise to Plaintiffs' claims occurred in this district.

## PARTIES

11. Plaintiff Gail Smith is a blind individual who is registered to vote in Alabama. Ms. Smith is a member of the National Federation of the Blind of Alabama. She resides in Winston County, Alabama, is a registered voter, and is eligible to vote absentee because her disability prevents her from making a trip to her polling place.

12. Ms. Smith is totally blind. She uses Job Access With Speech ("JAWS") screen reader software on her computer to interact with electronic information.

13. Ms. Smith would like to vote absentee in future elections. However, she is not comfortable voting absentee using Alabama's current paper ballot system because the system does not allow her to vote privately and independently. She does not wish to reveal her vote selections to a third party, and she is concerned that a third party may incorrectly mark her ballot or may make a mistake that causes her ballot not to be counted.

14. Because Alabama refuses to provide accessible electronic absentee ballots to voters with disabilities who cannot use paper absentee ballots, Ms. Smith will be unable to vote absentee privately and independently in upcoming elections.

15. Ms. Smith wished to vote absentee during the 2020 primary and general elections but she could not do so privately and independently because Alabama did not provide an accessible electronic ballot for blind voters. She ultimately did not vote absentee for that reason.

16. Ms. Smith was unable to vote in person in the 2020 general election. She called her polling location, but nobody was able to confirm the availability of accessible voting machines. Voting in person is already difficult for her because her polling place is 18 miles from where she lives. Ultimately, she was not able to arrange for transportation to her polling place.

17. Because she could not reach her polling location in person and had no independent and private way to vote absentee, Ms. Smith was functionally deprived of her right to vote in the 2020 elections.

18. Plaintiff Jill Rossiter is a blind individual who is registered to vote in Alabama. Ms. Rossiter is a member of the National Federation of the Blind of Alabama. She resides in Lauderdale County, Alabama. She is eligible to vote absentee because her disability prevents her from making a trip to her polling place. She wishes to vote absentee in future elections.

19. Ms. Rossiter is legally blind. She uses the JAWS screen reader software on her computer to interact with electronic information.

20. Ms. Rossiter does not want to reveal her voting preferences to other people. Even when she has voted using an accessible voting machine, she has had to ask a sighted friend to drive her to the polling place.

21. Ms. Rossiter wished to vote absentee during the 2020 primary and general elections but could not do so privately and independently because Alabama did not provide an accessible electronic ballot for blind voters and voters with print disabilities.

22. Ms. Rossiter did not vote in the 2020 primary election because she was concerned about exposing herself to COVID-19 by voting in person and Alabama offered no accessible absentee voting system. She voted early in person during the 2020 general election. She called to confirm that her polling place had an accessible voting machine and was able to arrange for a friend to drive her there. Although her friend had to fill out the ballot request form for her, she was able to vote privately and independently using an accessible voting machine.

23. Ms. Rossiter intends to vote in future elections, and her preference is to vote absentee. Under Alabama's current system, it is impossible for her to vote absentee privately and independently because absentee ballots are only available in paper format, which she cannot read or fill out on her own.

24. In order to vote absentee, Ms. Rossiter would have to ask a friend to read and mark her ballot for her, which would disclose to that person her voting choices and would require her to trust them to correctly mark her ballot so it reflects her wishes and so it will be counted in the election.

25. Plaintiff Eric Peebles is registered to vote in Alabama. He resides in Mobile, Alabama and is eligible to vote absentee because he is a voter with a print disability.

26. Dr. Peebles has cerebral palsy and quadriplegia. These conditions make it difficult for him to read printed text and handle printed materials. He uses WYNN Wizard screen reader software on his computer to interact with electronic information.

27. Voting independently and privately is important to Dr. Peebles. Promoting the independence of people with disabilities is also important to him.

28. Dr. Peebles voted absentee in the 2020 general election but he was unable to do so privately and independently because Alabama does not provide an accessible electronic ballot for voters with print disabilities. To cast his absentee ballot, Dr. Peebles had to have his care aide read the ballot to him. He then had to divulge to his care aide his voting choices, and she filled out the paper ballot and mailed it.

29. Dr. Peebles intends to vote in future elections, and his preference is to vote absentee. His disability makes it difficult for him to reach his polling place.

30. Plaintiff National Federation of the Blind of Alabama ("NFB-AL") is the Alabama affiliate of the National Federation of the Blind. NFB-AL is a 501(c)(3) non-profit corporation comprised of blind Alabama residents and their families and friends. The organization promotes the general welfare of the blind by assisting the blind in their efforts to integrate themselves into society on terms of equality and by removing barriers that result in the denial of opportunity to blind persons in virtually every sphere of life, including education, employment, family, civic, and community life. NFB-AL's goals include removal of legal, economic, and social discrimination. NFB-AL advances its members' right to participate fully

and equally in all aspects of their lives, including by ensuring its blind members can vote on equal footing with every other Alabama resident.

31. NFB-AL has many blind members, including Gail Smith and Jill Rossiter, who are registered to vote in Alabama, are eligible to vote absentee, and wish to vote in upcoming elections by casting absentee ballots privately and independently. NFB-AL brings this lawsuit on behalf of itself and on behalf of its members.

32. Defendant John Merrill is the Alabama Secretary of State and is sued in his official capacity. As Secretary of State, Defendant Merrill is the chief elections official in the State of Alabama. Ala. Const., art. V, § 112. He is charged with administering and supervising elections.

## FACTUAL BACKGROUND

**Use of Accessible Electronic Documents by the Blind and Print Disabled Individuals**

33. Blind people and people with print disabilities access documents from personal computers or smart devices by using keyboards in conjunction with screen reader software and/or voice-to-text software. Screen reader software reads aloud, or displays on a refreshable Braille display, the visual information on the electronic page.

34. Blind people and people with print disabilities can independently access and interact with printed materials only when they are rendered in electronic formats (e.g., Word or html) that can be used with screen reader software. When electronic documents are compatible with screen reader software, blind and print disabled people can fully and independently access and interact with the documents.

35. Several screen reader software programs are available, including Job Access With Speech (JAWS), NVDA, and VoiceOver.

36. The World Wide Web Consortium (W3C) develops international standards for the web. The Web Content Accessibility Guidelines (WCAG) 2.0, Success Criteria A and AA, issued by the W3C Web Accessibility Initiative, provide an international consensus standard for making electronic materials accessible to blind and print disabled people using screen reader software. These guidelines do not depend on the type of screen reader software being used. The WCAG guidelines have been adopted as the legal standard for federal government technology under Section 508 of the Rehabilitation Act, 36 C.F.R. § 1194.1, App. A, § 205.4, and certain state laws, regulations, and policies, including the State of Alabama Information Technology Standard, Standard 530S2-00: Universal Accessibility (2011).[4] *See also, e.g.*, TX Admin. Code §§ 213.10, 213.11, 213.15, 213.16; Pennsylvania Information Technology Policy ITP-ACC001;[5] Kansas ITEC Policy 1210, Revision 3, Information and Communication Technology Accessibility.[6]

## The Absentee Ballot Process in Alabama

37. Absentee voting in Alabama is available to certain voters, including those who have "any physical illness or infirmity which prevents [their] attendance at the polls." Ala. Code § 17-11-3(a)(2).

38. Likewise, absentee voting is available to any person who is "PHYSICALLY INCAPACITATED AND WILL NOT BE ABLE TO VOTE IN PERSON BECAUSE THEY CANNOT ACCESS THEIR ASSIGNED POLLING PLACE DUE TO ONE OF THE FOLLOWING DISABILITIES (neurological, musculoskeletal, respiratory (including speech

---

[4] Available at http://oit.alabama.gov/wp-content/uploads/2017/09/Standard_530S2_Universal_Accessibility.pdf.

[5] http://www.oa.pa.gov/Policies/Documents/itp_acc001.pdf.

[6] https://ebit.ks.gov/itec/resources/policies/policy-1210.

organs), cardiovascular, or other life-altering disorder that affects his or her ability to perform manual tasks, stand for any length of time, walk unassisted, see, hear or speak) AND: A) HE OR SHE IS AN ELDERLY VOTER AGED 65 OR OLDER; OR B) HE OR SHE IS A VOTER WITH A DISABILITY."[7]

39. Absentee voting is also available to other categories of voters, including voters living outside their county of residence, such as members of the armed forces or college students.[8]

40. An order from Governor Kay Ivey temporarily expanded eligibility for Alabama voters to cast absentee votes in the 2020 elections due to the COVID-19 pandemic. Although nearly all Alabama voters could vote privately and independently by absentee ballot in 2020, blind and print disabled voters were still excluded from doing so because Alabama relied exclusively on paper absentee ballots for voters living in the U.S.

41. Alabama law specifically and explicitly permits voters with disabilities, such as Plaintiffs, to vote absentee. Ala. Code §§ 17-11-3, 17-11-3.1.

42. Individuals who wish to vote absentee in Alabama must first request an absentee ballot from the local Absentee Ballot Manager. The application for absentee ballot for each Alabama county is online on the Secretary of State's website. However, the ballot itself is provided to absentee voters living in the U.S. only on paper.

43. Alabama voters receive three envelopes with their absentee ballot: a "secrecy" envelope, an "affidavit" envelope, and a pre-addressed "outer" envelope. Once a voter receives

---

[7] *Absentee Voting Information*, ALABAMA SECRETARY OF STATE, https://www.sos.alabama.gov/alabama-votes/voter/absentee-voting (last visited May 19, 2022).

[8] *Id.*

9

the absentee or mail-in ballot and three envelopes in the mail, the voter must complete the following steps:

  a. Locate the envelope sent to the voter's address, which contains the ballot, "secrecy" envelope, "affidavit" envelope, and "outer" envelope;

  b. Open the envelope and identify the ballot, the "secrecy" envelope, "affidavit" envelope, and "outer" envelope;

  c. Read the ballot and fill it out by hand using a pen;

  d. Place and seal the completed ballot inside the "secrecy" envelope;

  e. Place the "secrecy" envelope inside the "affidavit" envelope;

  f. Seal the "affidavit" envelope and complete the affidavit printed on the outside;

  g. Sign the affidavit and have the signature witnessed by either a notary public or two witnesses 18 years of age or older;

  h. Place and seal the "affidavit" envelope inside the pre-addressed "outer" envelope;

  i. Place the "outer" envelope in the mail.

**Alabama's Absentee Ballot Process Is Inaccessible**

44. Alabama law guarantees "every voter in Alabama … the right to vote a secret ballot, and that ballot shall be kept secret and inviolate." Ala. Code § 17-6-34.

45. The Alabama absentee voting process allows a sighted individual to vote secretly, independently, and privately without having to reveal their voting choices to anyone or travel to a polling place on election day.

46. Blind individuals and those with print disabilities, including Plaintiffs, cannot read the printed text that appears on the absentee ballot, mark the paper ballot, or complete the multi-step ballot return process described above without assistance.

47. Because Plaintiffs and other Alabama voters who are blind or have print disabilities must rely on the assistance of another person, they cannot vote secretly, privately, and independently using absentee ballots.

**Mechanisms are Available to Provide Accessible Absentee Ballots.**

48. Accessible alternatives to paper absentee ballots exist and are used in other states.

49. Implementing accessible electronic alternatives to paper absentee ballots would afford Plaintiffs an equal opportunity to vote privately and independently via absentee ballot.

50. Technology is readily available that would provide Plaintiffs, and other voters with vision and print disabilities, the opportunity to cast their votes through accessible electronic absentee ballots. Accessible electronic absentee ballots enable individuals with vision and print disabilities to vote privately and independently by absentee ballot—as sighted individuals may do.

51. Remote Accessible Vote-By-Mail (RAVBM) systems provide an electronic version of the ballot that is readable and fillable using a voter's screen reader software.

52. Many states provide remote accessible absentee ballot marking tools using commercially available RAVBM systems that allow voters to receive ballots online or by email, mark ballots on their computers using assistive technology, and return ballots via online submission, email, or mail.

53. For example, the State of Maryland developed an online ballot marking tool that allows voters to view and mark their absentee ballots on their computers. Maryland created the tool to work with screen access software and has extensively tested the tool's usability for individuals with a range of disabilities.

54. On information and belief, Maryland shares its online ballot marking tool technology with other states at no charge.

55. Many other states and local boards of elections across the country have implemented RAVBMs such as the Democracy Live voting system, the Enhanced Voting

system, the Prime III system, the Five Cedars Alternate Format Ballot, and/or the Dominion Voting system to make their absentee voting programs accessible.

56. These RAVBM systems have been approved for use in Oregon, Washington, New Hampshire, California, Ohio, Colorado, Hawaii, Michigan, New York, Pennsylvania, Delaware, West Virginia, Virginia, and the District of Columbia, among other jurisdictions.

57. The use of RAVBM systems in other states demonstrates that electronic absentee voting systems can be made accessible and available to voters with vision and print disabilities in Alabama.

### Alabama Offers Electronic Ballots to Overseas and Military Voters but Has Refused to Provide Them to Blind and Print Disabled Voters

58. A separate absentee voting system applies to Alabama voters who live overseas or who are active members of the military.

59. Military and overseas voters may receive their absentee ballots electronically through this system.

60. Overseas voters, including military voters who are outside the U.S., may also return their ballots electronically.

61. The ADA and Section 504 require these electronic ballots to be accessible for overseas voters with vision and print disabilities. Therefore, they can be made accessible and available to voters with vision and print disabilities.

62. Alabama has refused to make its existing electronic ballots available to voters with vision and print disabilities who are eligible to vote absentee.

63. Disability rights advocates, including NFB-AL, have repeatedly engaged with Defendant about the need for a RAVBM system for vision and print disabled voters but Defendant has failed to implement one.

64. In September 2019, for example, NFB-AL urged Defendant to make Alabama's absentee ballot program accessible to blind and print disabled voters. Specifically, NFB-AL proposed working with Voting Works, an electronic ballot delivery system which, in 2020, provided accessible electronic ballot delivery to Kentucky, Virginia, Illinois, Massachusetts, and New Hampshire. Defendant rejected that proposal and declined to pursue other solutions.

65. Most recently, in April 2022, Plaintiffs' counsel, on behalf of the National Federation of the Blind, NFB-AL, and individual blind Alabama voters, again wrote to Defendant expressing concerns about Alabama's inaccessible absentee voting program and asking Defendant to remedy it. Defendant did not commit to implementing an electronic ballot delivery system.

## COUNT I

### Violation of Title II of the Americans with Disabilities Act
### (42 U.S.C. § 12131–12134)

66. Plaintiffs incorporate the allegations in the preceding paragraphs as if fully set forth herein.

67. Title II of the ADA guarantees qualified individuals an equal opportunity to access the benefits of the services, programs, or activities of a public entity. 42 U.S.C. § 12132.

68. Title II mandates that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services,

programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id.*

69. In providing aids, benefits, or services, public entities may not "[a]fford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others," nor may public entities provide qualified individuals with disabilities "an aid, benefit, or service that is not as effective in affording equal opportunity" to obtain the same result or benefit as provided to others. 28 C.F.R. § 35.130(b)(1)(ii)-(iii).

70. Public entities must make reasonable modifications to their policies, practices, and procedures when necessary to avoid discriminating against individuals with disabilities. *Id.* § 35.130(b)(7)(i).

71. Furthermore, public entities "shall take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others," and "shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." *Id.* § 35.160.

72. To be effective, "auxiliary aids and services must be provided in . . . such a way as to protect the privacy and independence of the individual with a disability." *Id.* § 35.160(b)(2).

73. Auxiliary aids and services include "screen reader software; magnification software; optical readers; … accessible electronic and information technology; or other effective

methods of making visually delivered materials available to individuals who are blind or have low vision." *Id.* § 35.104.

74. Because they are blind, Ms. Smith, Ms. Rossiter and other NFB-AL members are individuals with disabilities protected by the ADA. *See* 42 U.S.C. § 12102; 28 C.F.R. § 35.108(a)(1), (b)(1)(i), (b)(2), (c)(1)(i); 28 C.F.R. § 35.108(d)(2)(iii)(B) ("Blindness substantially limits seeing").

75. Because he has cerebral palsy, Dr. Peebles is an individual with a disability protected by the ADA. *See Id*; 28 C.F.R. § 35.108(d)(2)(iii)(G) ("Cerebral palsy substantially limits brain function").

76. Ms. Smith, Ms. Rossiter, Dr. Peebles, and NFB-AL members are registered to vote in Alabama, are eligible to vote absentee, and would like to vote absentee in Alabama elections.

77. Ms. Smith, Ms. Rossiter, other NFB-AL members, and Dr. Peebles are qualified to receive voting services from Defendant and are entitled to the protections afforded under the ADA. *See* 42 U.S.C. § 12131(2).

78. Defendant John Merrill in his capacity as Secretary of State is an agency or instrumentality of the state of Alabama subject to the ADA.

79. Absentee voting is a service, program, or activity provided by Defendant.

80. Defendant's absentee voting process discriminates against Plaintiffs and other blind and print disabled voters because these individuals cannot read or mark their ballots secretly, privately and independently, but voters without vision and print disabilities can.

81. Defendant has failed to provide Plaintiffs and other blind and print disabled voters with an opportunity to vote by absentee ballot that is equal to the opportunity provided to voters that do not have disabilities.

82. Defendant has failed to make reasonable modifications to Alabama's absentee voting process by offering accessible electronic voting to Plaintiffs and other voters who are blind or print disabled.

83. Defendant has failed to provide Plaintiffs and blind and print disabled voters auxiliary aids and services necessary to afford them equally effective communication with equivalent privacy and independence by providing accessible electronic absentee ballots.

84. Defendant has excluded and continues to exclude Plaintiffs and other voters who are blind or print disabled from participating in, and denied them the benefits of, or otherwise discriminated against them in, the service, program, or activity of absentee voting.

85. The only accommodation sufficient to provide blind and print disabled voters an equal opportunity to participate in Alabama's absentee voting program is the provision of accessible electronic absentee ballots. It would have been futile and superfluous for Plaintiffs to request that accommodation on an individual basis. The need for an accessible absentee voting program has long been obvious. Since at least 2019, NFB-AL and other disability rights advocates have repeatedly called on Defendant to comply with the ADA and Section 504 by providing accessible electronic absentee ballots. Defendant has demonstrated no willingness to do so.

86. Accessible absentee ballot systems are readily available, and such systems would allow independent, private absentee voting for people who are unable to read and mark a paper absentee ballot by reason of disability.

87. Defendant already provides electronic ballots to overseas and military voters and permit overseas voters to return their ballots electronically.

88. As a result of Defendant's actions and inactions, Ms. Smith, Ms. Rossiter, Dr. Peebles, and NFB-AL members have suffered and continue to suffer from discrimination and unequal access to Defendant's programs, services, or activities. In the absence of injunctive relief, Plaintiffs will be denied their right to vote privately and independently by absentee ballot.

89. Ms. Smith, Ms. Rossiter, Dr. Peebles, and NFB-AL members are at imminent risk of irreparable harm absent injunctive relief providing an accessible, electronic absentee voting option in upcoming elections.

90. Defendants' failure to meet their obligations to provide blind and print disabled voters with an equal opportunity to vote by absentee ballot is an ongoing violation of the ADA and its implementing regulations.

**COUNT II**
**Violation of Section 504 of the Rehabilitation Act of 1973**
**(29 U.S.C. § 794 *et seq.*)**

91. Plaintiffs incorporate the allegations in the preceding paragraphs as if fully set forth herein.

92. Plaintiffs Ms. Smith, Ms. Rossiter, Dr. Peebles, and NFB-AL members are individuals with disabilities who are registered and eligible to vote and are protected by Section 504.

93. Section 504 mandates that "[n]o otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ." *Id.* § 794(a).

94. Section 504 defines "program or activity" to include "all of the operations of . . . a department, agency, special purpose district, or other instrumentality of a State or of a local government" or "the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government[.]" *Id.* § 794(b)(1).

95. Such federally funded entities may not, in providing aids, benefits, or services, "[d]eny a qualified handicapped person the opportunity accorded others to participate in the program or activity receiving Federal financial assistance." 28 C.F.R. § 42.503(b)(1)(i).

96. Such federally funded entities must also "insure that communications with their … beneficiaries are effectively conveyed to those having impaired vision and hearing," *id.* § 42.503(e), and, if the entity has 15 or more employees, must "provide appropriate auxiliary aids to qualified handicapped persons with impaired sensory, manual, or speaking skills where a refusal to make such provision would discriminatorily impair or exclude the participation of such persons in a program or activity receiving Federal financial assistance," *id.* § 42.503(f).

97. Defendant John Merrill in his capacity as Secretary of State is an agency or instrumentality of the state of Alabama and receives federal financial assistance, and therefore is subject to the requirements of Section 504.

98. Absentee voting is a service, program, or activity provided by Defendant.

99. Ms. Smith, Ms. Rossiter, Dr. Peebles, and NFB-AL members are people with disabilities under Section 504.

100. Ms. Smith, Ms. Rossiter, Dr. Peebles, and NFB-AL members are registered to vote in Alabama and are eligible to vote absentee and are thus qualified individuals with disabilities entitled to the protections of Section 504.

101. Defendant has failed and continues to fail to provide voters with vision and print disabilities an opportunity to vote that is equal to the opportunity provided to other voters.

102. In refusing to implement an accessible electronic absentee ballot system, Defendant is withholding an auxiliary aid or service that would allow Plaintiffs equal access to absentee voting.

103. Accordingly, Defendant has discriminated and continues to discriminate against Plaintiffs with respect to absentee voting.

104. As a result of Defendant's actions and inactions, Plaintiffs have suffered and continue to suffer from discrimination and unequal access to Defendant's program, service, or activity of voting by absentee ballot.

105. Ms. Smith, Ms. Rossiter, Dr. Peebles, and NFB-AL members are at imminent risk of irreparable harm absent injunctive relief providing an accessible, electronic absentee voting option in upcoming elections.

106. Defendant's failure to provide blind and print disabled voters with an equal opportunity to vote by absentee ballot is an ongoing violation of Section 504.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that this Court enter judgment in their favor and award them the following relief:

A. A permanent injunction prohibiting Defendant from violating the ADA and Section 504 and requiring Defendant to remedy the inaccessibility of Alabama's absentee ballot system by implementing a remote accessible vote-by-mail system, including electronic delivery and return of ballots, for people with vision and print disabilities for all future elections;

B. A declaration that Defendants have and continue to violate the ADA and Section 504 by failing to offer accessible electronic ballots to voters with vision and print disabilities who are eligible to vote absentee;

C. An award of Plaintiffs' reasonable attorneys' fees, litigation expenses, and costs; and

D. Such other and further relief as the Court may deem just and proper.

Respectfully submitted,

/s/ *William Van Der Pol*
William Van Der Pol
Alabama Disabilities Advocacy Program
2008 12th Street
Tuscaloosa, AL 35401
(205) 348-4928 (phone)
wvanderpoljr@adap.ua.edu

Eve L. Hill*
Brown Goldstein & Levy
120 E. Baltimore St., Ste. 2500
Baltimore, MD 21202
(410) 962-1030 (phone)
(410) 385-0869 (fax)
ehill@browngold.com

Bradley Heard*
Liza Weisberg*
Southern Poverty Law Center
150 E. Ponce de Leon Avenue, Suite 340
Decatur, GA 30030
(470) 521-6700 (phone)
bradley.heard@splcenter.org
liza.weisberg@splcenter.org

*Counsel for Plaintiffs*

*Motions for Admission or Motions to Participate *Pro Hac Vice* will be filed after case opening.