FILED

2022 Jul-13  PM 04:38
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| The NATIONAL FEDERAL OF THE BLIND OF ALABAMA, GAIL SMITH, JILL ROSSITER, and ERIC PEEBLES, | ) ) ) ) ) |
| *Plaintiffs,* | ) ) |
| vs. | )   Case No. 2:22-cv-00721-CLM |
| JOHN H. MERRILL *in his official capacity as Secretary of State of Alabama,* | ) ) ) ) |
| *Defendant.* | ) |

## <u>SECRETARY MERRILL'S MOTION TO DISMISS</u>

Steve Marshall
 *Attorney General*
James W. Davis (ASB-4063-I58J)
 *Deputy Attorney General*
A. Reid Harris (ASB-1624-D29X)
Brenton M. Smith (ASB-1656-X27Q)
 *Assistant Attorneys General*

OFFICE OF THE ATTORNEY GENERAL
501 Washington Avenue
Montgomery, Alabama 36104
Telephone: (334) 242-7300
Fax: (334) 353-8400
Jim.Davis@AlabamaAG.gov
Reid.Harris@AlabamaAG.gov
Brenton.Smith@AlabamaAG.gov

# TABLE OF CONTENTS

Introduction ...................................................................................................... 1

Background ...................................................................................................... 2

Legal Standard ............................................................................................... 4

Argument ......................................................................................................... 4

I.     Plaintiffs lack standing against Secretary Merrill because they cannot establish traceability and redressability. ......................................................... 5

II.    The Complaint fails to state a claim. .......................................................... 7

A.    The ADA and Rehab Act do not preempt Alabama election law because the ADA and Rehab Act do not specifically regulate elections. ........................... 8

B.    Neither the ADA nor the Rehab Act requires Alabama to fundamentally alter voting or otherwise compromise an "essential eligibility" requirement by foregoing the use of a paper ballot. ............................................................. 12

C.    Plaintiffs have not been excluded from voting generally or even absentee voting or secret voting specifically .............................................................. 16

D.    Plaintiffs' claim under the Rehab Act is due to be dismissed because there is no allegation of discrimination based solely on disability and there is no specific allegation about federal funding. ..................................................... 23

Conclusion ...................................................................................................... 25

## INTRODUCTION

Plaintiffs claim that Alabama discriminates against individuals with disabilities because it does not provide them with Internet-based voting. Unlike some States, Alabama law does not give every voter the option of absentee voting. But it does allow disabled voters—including Plaintiffs here who allege they have certain "vision and print disabilities"—the option of voting absentee. Alabama also provides specific accommodations (including special machines and third-party assistance from a poll worker or other preferred individual) to help visually impaired voters vote in person. But Plaintiffs demand more. Because they do not wish to ask for assistance to complete an absentee ballot, they say that the Americans with Disabilities Act and the Rehabilitation Act require Alabama to offer them their preferred voting method: a special "electronic ballot delivery" system. And because Alabama does not offer them the opportunity to vote on the Internet, Plaintiffs claim that Alabama Secretary of State John Merrill is apparently discriminating against them on the basis of their disability. Plaintiffs are wrong.

First, Plaintiffs lack standing to sue Secretary Merrill because their alleged injury is neither traceable to nor redressable by a court order against him. Secretary Merrill does not supervise the local officials who are responsible for conducting elections generally and delivering absentee ballots specifically. In unrelated

1

litigation, this Court recently dismissed an ADA claim against Secretary Merrill on similar grounds. The same result is required here.

Second, the Complaint fails to state a claim for several reasons. As a threshold matter, the ADA does not preempt Alabama election law because it does not do so *explicitly*, as is required for federal law to preempt State election law. And even if the ADA applies at all, the ADA does not require States to sacrifice essential criteria when administering public services, and the use of a paper ballot is essential as a matter of Alabama law. What's more, Plaintiffs do not allege that they have been excluded from *voting*, and whether plaintiffs can vote—not whether they can vote *absentee*—is the decisive inquiry under the ADA. Plaintiffs' Rehab Act claims fail for these reasons and more.

Alabama law does not permit Plaintiffs to vote by remote electronic ballot and federal law does not require it. The Complaint therefore is due to be dismissed.

## BACKGROUND

According to the allegations in the Complaint, Plaintiff National Federation of the Blind of Alabama is a non-profit corporation comprised of Alabama residents that promotes "the general welfare of the blind." Doc. 1 ¶ 30. Two other plaintiffs— Gail Smith and Jill Rossiter, who are blind—are NFB members. *Id.* ¶ 31. The third individual plaintiff, Eric Peebles, alleges that he has a "print disability" that makes

him eligible to vote absentee. *Id.* ¶¶ 25-26. Each of the individual plaintiffs is eligible to vote absentee because of their disabilities. *Id.* ¶ 41.

Plaintiffs allege that, under Alabama law, a blind voter can "vote privately and independently using an accessible voting machine" when voting in person. ¶ 22. However, Plaintiffs Rossiter and Peebles *prefer* voting absentee, *id.* ¶¶ 23 & 29, and Plaintiff Smith alleges that she could not arrange for transportation to her polling place to vote in person during the 2020 general election, *id.* ¶ 16. Plaintiffs all allege that they "would like to vote absentee in Alabama elections." *Id.* ¶ 76.

Plaintiff NFB first demanded Secretary Merrill administer an "electronic ballot delivery" for Alabama elections in 2019. Doc. 1 ¶ 63. When Plaintiff again demanded a change to Alabama law in 2022, Secretary Merrill "did not commit to implementing an electronic delivery system." *Id.* ¶ 65. Plaintiffs therefore filed suit. They bring two claims: one under the Americans With Disabilities Act (*id.* ¶¶ 66-90) and another under the Rehabilitation Act (*id.* ¶¶ 91-106).

Under both counts, Plaintiffs demand a new voting system featuring "electronic delivery and return of ballots[] for people with vision and print disabilities for all future elections" as well as declaratory relief and an award of fees and costs. Doc. 1 at 19-20.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully" and more than labels, conclusions, "formulaic recitation of the elements," or "naked assertions." Id. (citing *Twombly*, 550 U.S. at 555–57). On a motion to dismiss, a court accepts the plaintiff's factual allegations as true. Id. at 678. "However, conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Airlines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). A facial attack on subject-matter jurisdiction under Rule 12(b)(1) applies essentially the same test employed for 12(b)(6) review. See *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009).

## ARGUMENT

Plaintiffs' Complaint is due to be dismissed because (1) Plaintiffs lack standing and (2) the Complaint fails to state a claim upon which relief could be granted.

I.    **Plaintiffs lack standing against Secretary Merrill because they cannot establish traceability and redressability.**

"[T]he irreducible constitutional minimum of standing contains three elements." *Defs. of Wildlife v. Lujan*, 504 U.S. 555, 560 (1992). "For a party to have standing to bring a lawsuit, it must have '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Muransky v. Godiva Chocolatier, Inc.,* 979 F.3d 917, 924 (11th Cir. 2020) (en banc) (quoting *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547 (2016)).

Standing requires the alleged injuries to be "fairly traceable to the *challenged action of the defendant*." *Doe v. Pryor*, 344 F.3d 1282, 1285 (11th Cir. 2003) (citing *Lujan*, 504 U.S. at 560) (emphasis in original). In other words, a plaintiff's injuries must be redressable by an action against a particular defendant. *See id.* ("Even if we assume that all of those alleged injuries meet the *Lujan* injury-in-fact requirement, [plaintiff] still does not have standing to bring this claim because her injuries are not fairly traceable to the Alabama Attorney General, and they cannot be redressed through this action against him."); *Collins v. Yellen*, 141 S. Ct. 1761, 1779 (2021) ("[F]or purposes of traceability, the relevant inquiry is whether the plaintiffs' injury can be traced to 'allegedly unlawful conduct' of the defendant, not to the provision of law that is challenged."). Courts can "enjoin executive officials from taking steps to enforce a statute . . . only when the officials who enforce the challenged statute

5

are properly made parties to a suit." *Jacobson v. Fla. Sec'y of State,* 974 F.3d 1236, 1255 (11th Cir. 2020).

The Eleventh Circuit's decision in *Jacobson* controls the standing analysis here. In *Jacobson*, plaintiffs sued the Florida Secretary of State for injunctive and declaratory relief regarding the ordering of candidates on ballots. The district court "permanently enjoined the Secretary and the 67 Supervisors of Elections from implementing the ballot-order statute," even though the supervisors were not parties to the lawsuit. *Id.* at 1244. In reversing, the Eleventh Circuit found the "district court acted ultra vires by ordering relief that it had no jurisdiction to award." *Id.* at 1245. The court explained, "[a] declaratory judgment against the Secretary does not bind the Supervisors," who were not parties to the action. *Id.* at 1254. Because the Secretary did not control ballot order—the Supervisors did—the plaintiffs could not establish standing to sue *the Secretary*, and the case against him was due to be dismissed.

The same is true here. Under Alabama law, although the Secretary of State is the "chief elections officer in [Alabama]," ALA. CODE § 17-1-3(a), Probate Judges are the chief elections official of each county, § 17-1-3(b). Relevant here, another official—the Absentee Election Manager—manages the absentee balloting process. AEMs of each county receive the absentee ballots, ALA. CODE § 17-11-9, deliver them to the absentee election officials, § 17-11-10, and count the ballots in

conjunction with other local election officials, § 17-11-11. This process does not involve the Secretary. As a result, "any injury [Plaintiffs] might suffer is neither fairly traceable to the Secretary nor redressable by a judgment against [him] because [he] does not enforce the challenged law." *Jacobson*, 974 F.3d at 1241. This Court "lack[s] authority to enjoin those officials in this suit, so it [is] powerless to provide redress." *Id.* at 1241-42. Plaintiffs therefore lack standing and the Complaint is due to be dismissed.[1]

## II.     The Complaint fails to state a claim.

The Complaint fails to state a claim for several reasons: The ADA and Rehab Act[2] do not regulate election-related conduct; using paper ballots in elections is an essential eligibility criterion under Alabama law; and there is no allegation that Plaintiffs have been excluded *from voting*. Independently, Plaintiffs' claim under the Rehab Act is due to be dismissed because the Complaint contains no allegation of discrimination based *solely* on disability and no specific allegation about federal funding.

---

[1]      *See also People First of Alabama v. Merrill,* 491 F. Supp. 3d 1076 (N.D. Ala. 2020) (dismissing challenges to certain voting requirements against Secretary Merrill based on *Jacobson*).

[2]      The same framework applies to claims brought under the ADA and Rehab Act. *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000). Accordingly, Plaintiffs' Rehab Act claim is due to be dismissed for the same reasons as the ADA claim as set out in Sections A-C.

**A.**     **The ADA and Rehab Act do not preempt Alabama election law because the ADA and Rehab Act do not specifically regulate elections.**

Except as specifically required by the Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C. § 20302, Alabama law requires that all ballots cast in elections be paper ballots. *See infra* § II.B; Doc. 1 ¶ 42. Because the ADA and Rehab Act do not specifically regulate elections, they do not preempt Alabama laws governing the conduct of elections. Plaintiffs therefore fail to state a claim and the Complaint must be dismissed.

To determine whether federal law preempts state law in this context, courts "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 13 (2013) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). "This plain statement rule is nothing more than an acknowledgment that the States retain substantial sovereign powers under our constitutional scheme, powers with which Congress does not readily interfere." *Gregory v. Ashcroft*, 501 U.S. 452, 461 (1991). Because the Constitution "confers on the states broad authority to regulate the conduct of elections, including federal ones," *Griffin v. Roupas*, 385 F.3d 1128, 1130 (7th Cir. 2004) (Posner, J.), Congress must speak clearly to regulate elections in a way that conflicts with State law.

Consider *United States v. Gradwell*, 243 U.S. 476, 485 (1917). There, the Supreme Court held that a federal statute making it a federal crime "to defraud the United States in any manner for any purpose" did not reach election fraud. *Id.* at 480. Notwithstanding the statute's broad language, the Court explained that the "clearly established . . . policy of Congress" is "to leave the conduct of the election of its members to state laws, administered by state officers." *Id.* at 485. And when Congress "has assumed to regulate such elections[,] it has done so by positive and clear statutes." *Id.* at 485.[3] A general statute criminalizing fraud against the United States "in any manner for any purpose" did not satisfy this requirement. *Id.*

To be sure, Congress is not powerless to regulate the times, places, and manner of elections. But when it undertakes to regulate elections, it must do so *specifically* in legislation targeting the conduct of elections. *See, e.g.*, 52 U.S.C. § 20101, *et seq.* (Voting Accessibility for the Elderly and Handicapped Act). This occurs most naturally in "Elections Clause legislation," where the presumption against federal preemption plays no role. *Arizona*, 570 U.S. at 13-15; *see* U.S. Const. Art. I, § 4, cl.1.[4] This rule makes sense, because when "Congress legislates with

---

[3] More recently, the Supreme Court tacitly reaffirmed *Gradwell* as applied to non-election laws by foreclosing its application when "constru[ing] statutes (like the [National Voter Registration Act]) in which Congress has *indisputably* undertaken 'to regulate such elections.'" *Arizona*, 570 U.S. at 13 n.5.

[4] The Elections Clause provides: "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the places of chusing Senators."

respect to the 'Times, Places and Manner' of holding congressional elections, it necessarily displaces some element of a pre-existing legal regime erected by the States." *Arizona*, 570 U.S. at 14. In that context, Congressional intent to regulate elections is unmistakable.

Importantly, the ADA and Rehab Act are not Elections Clause legislation. In the ADA, Congress invoked "the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities." 42 U.S.C. § 12101(b)(4). "[T]he ADA does not include even a single provision specifically governing elections." *Lightbourn v. County of El Paso*, 118 F.3d 421, 430 (5th Cir. 1997). The Act—as part of its legislative findings—contains a single reference to "voting." *See* 42 U.S.C. § 12101. So too the Rehab Act. *See* 29 U.S.C. § 701. Congress enacted the Rehab Act under its Spending Clause power. *See Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562, 1569 (2022). It should be undisputed that the ADA and Rehab Act were not enacted pursuant to Congress's authority under the Elections Clause.

Because these laws were not enacted under the Elections Clause, courts "must be absolutely certain that Congress intended such an exercise" before applying them to preempt State election law. *Gregory*, 501 U.S. at 464. In *Gregory*, the Supreme Court considered a challenge under the Age Discrimination in Employment Act to a provision of the Missouri Constitution that provided a mandatory retirement age for

judges. *Id.* at 455. As a matter of statutory interpretation, the question was whether a judge was an "appointee at the policymaking level" as to be excluded from the definition of "employee." *Id.* at 466-67. The Supreme Court admitted that including judges within the policymaking-level exemption was "an odd way for Congress to exclude judges" but emphasized that it "w[ould] not read the ADEA to cover state judges unless Congress has made it clear that judges are *included.*" *Id.* at 467. Applying this plain statement rule, the Court ruled that judges were "appointee[s] at the policymaking level" as to be exempted from ADEA's scope. *Id.* at 464.

Even though a natural reading of ADEA would have included state-court judges within its scope, the Supreme Court refused to interpret ADEA in a way that intruded into an area traditionally regulated by the States. This Court should do the same here. Even if a natural reading of the ADA and Rehab Act would include the conduct of elections within its scope, it cannot be said that it was the "manifest purpose of Congress" to do so. *Rice*, 331 U.S. at 230. Congress knows how to regulate State elections and preempt State election laws. *See Arizona*, 570 U.S. at 13-15. It did not so do here.[5]

---

[5]     It does not appear that binding precedent requires the Court to hold that the ADA regulates the conduct of elections. For example, though the Eleventh Circuit has applied the ADA in the election context and stated that "disabled citizens must be able to participate in the County's voting program," the general applicability of the ADA to elections was not an issue raised by the parties. *Am. Ass'n of People with Disabilities v. Harris*, 647 F.3d 1093, 1107 (11th Cir. 2011); *see id* Br. of Appellant, 2008 WL 936736; *cf. Tennessee v. Lane*, 541 U.S. 509, 530-31 (2004) ("[T]he question presented in this case is *not* whether Congress can validly subject the States to private suits for money damages for failing to provide reasonable access to . . . voting booths.") (emphasis

**B.    Neither the ADA nor the Rehab Act requires Alabama to fundamentally alter voting or otherwise compromise an "essential eligibility" requirement by foregoing the use of a paper ballot.**

To state a claim under the ADA, a plaintiff must allege facts that could establish three elements: (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability. *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1083 (11th Cir. 2007). A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices . . . meets the essential eligibility requirements" for the public action in question. 42 U.S.C. § 12131(2).

The ADA and Rehab Act "do[] not require States to employ any and all means to make [public] services accessible to persons with disabilities, and [they] do[] not require States to compromise their essential eligibility criteria for public programs." *Tennessee v. Lane*, 541 U.S. 509, 531-32 (2004). "[They] require[] only 'reasonable modifications' that would not fundamentally alter the nature of the service provided, and only when the individual seeking modification is otherwise eligible for service."

---

added). "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Webster v. Fall*, 266 U.S. 507, 511 (1925); *see also Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1280 (11th Cir. 1999).

*Id.* at 532. "And in no event is the entity required to undertake measures that would impose an undue financial or administrative burden . . . or effect a fundamental alteration in the nature of the service." *Id.*

Plaintiffs fail to state a claim under either the ADA or Rehab Act because their requested relief would override Alabama's essential eligibility requirements for voting and fundamentally alter Alabama's elections. In Alabama, using a paper ballot is a key requirement for having one's vote counted. As explained further below, multiple statutory references make clear that Alabama law contemplates only the use of paper ballots, including requirements for their print and design, their handling, and other requirements that would not make sense for intangible electronic ballots. And just because federal law forces Alabama to make exceptions to these requirements for uniformed and overseas voters—pursuant to the Uniformed and Overseas Citizens Absentee Voting Act, *see* 52 U.S.C. § 20302—does not mean they are not essential requirements in all other contexts as explained further below.

All elections in Alabama "shall be by official ballot prescribed by law." ALA. CODE § 17-6-20. These prescriptions include several design requirements. For example, Alabama Code § 17-6-24 governs the "Printing and design" of the ballots, including specifics as to how the columns of the ballot are to be laid out and what emblems may appear. Alabama Code § 17-6-26 expands further, providing that ballots "shall be of the size and design required by the precinct ballot counters and

may be *printed* upon one or more separate pages or cards." *Id.* (emphasis added). Other sections reaffirm that the Code requires paper ballots as an essential feature of voting—governing how they may be packaged, *see* ALA. CODE § 17-6-43; requiring that they feature a numbered, detachable stub, *id.*; and requiring that the probate judge of each county "have printed, at the expense of the county, ballots … and other stationery or blank forms necessary in the conduct of elections," ALA. CODE § 17-6-47. None of these requirements make sense as applied to electronic ballots, showing that Alabama law requires the use of paper ballots as a key feature of the elections process.

Even the provisions of Alabama law governing absentee ballots underscore the essential nature of paper ballots. Absentee ballots "shall be in the same form as the official regular ballots for the election, except that they shall have printed thereon the words, 'Official Absentee Ballot.'" ALA. CODE § 17-11-6. The return of absentee ballots may be done only "by mail, by hand delivery, or by commercial carrier"—not electronically. ALA. CODE § 17-11-3(a). And all absentee ballots must be submitted in an affidavit envelope signed by the voter and either two witnesses or a notary public. ALA. CODE § 17-11-10. No envelope may be opened—and thus no ballot counted—unless it bears these signatures because they "go[] to the integrity and sanctity of the ballot and election." *Id.* In *People First of Alabama v. Merrill*, this Court found that plaintiffs failed to state an ADA claim against this requirement

14

as a matter of law "[b]ecause the witness requirement is deemed a condition precedent to eligibility under state law" and thus was an essential eligibility requirement. 467 F. Supp. 3d 1179, 1219 (N.D. Ala. 2020) (finding no likelihood of success on the merits for preliminary injunction on this grounds); *see also People First of Alabama v. Merrill*, 479 F. Supp. 3d 1200, 1212 (N.D. Ala. 2020) (granting motion to dismiss regarding this claim). Yet again, none of these requirements make sense as applied to electronic ballots, showing that Alabama law requires the use of paper ballots as a key feature of the elections process.

That federal legislation forces the State to offer electronic ballots to overseas voters does not undermine the essentiality of the paper ballot requirement. The Uniformed and Overseas Absentee Voting Act, 52 U.S.C. § 20302(7), requires Alabama to "establish procedures for transmitting by mail and electronically blank absentee ballots" to uniformed and overseas voters.[6] That Alabama has made an exception to comply with explicit federal law cannot undermine an eligibility requirement's essentiality, which this Court recognized as a "valid" point in *People First of Alabama*. *See* 479 F. Supp. 3d at 1212. Otherwise, the State must always choose between either "compromis[ing] [its] essential eligibility criteria for public programs," *Lane*, 541 U.S. at 532, or openly defying federal voting laws—

---

[6] *Compare* 52 U.S.C. § 20310(5) (providing federal definition of "overseas voter"), *with* ALA. CODE 17-11-40(2) (providing substantially similar Alabama definition of "overseas voter").

prompting suit from the United States.[7] This situation is a far cry from *Mary Jo C. v. New York State & Local Retirement System*, 707 F.3d 144 (2d Cir. 2013), where New York *voluntarily* chose to "waive[] or extend[] the filing deadline for disability retirement benefits." *Id.* at 160. Plaintiffs cannot rely on the forced exception made for overseas voters to force further exceptions.[8]

In sum, Plaintiffs fail to state a claim under either the ADA or the Rehab Act because their requested relief goes too far. Whether framed as compromising an essential eligibility requirement—i.e., a condition precedent for having a ballot counted—or as causing a fundamental alteration to its system of elections, neither statute can provide the relief Plaintiffs seek as a matter of law. Alabama statutes law requires the use of only paper ballots in elections. Accordingly, this Court should dismiss Plaintiffs' suit for failure to state a claim.

### C.     Plaintiffs have not been excluded from voting generally or even absentee voting or secret voting specifically.

Even if Plaintiffs could bypass the essential eligibility requirements for voting in Alabama or seek relief that would fundamentally alter its elections, they have still failed to state a prima facie claim under the ADA because Alabama has not discriminated against Plaintiffs (or any other voter with disabilities or who otherwise

---

[7] The United States has sued Alabama multiple times to enforce the Uniformed and Overseas Citizens Absentee Voting Act. *See, e.g., United States v. Alabama,* 778 F.3d 926 (11th Cir. 2015).

[8] An exception that, by the way, comes with numerous additional requirements for those overseas voters who qualify for electronic *return* of ballots to compensate for the security risk of not returning a paper ballot. *See* ALA. CODE § 17-11-42; ALA. ADMIN. CODE r. 820-2-10-.06.

cannot read) by excluding them from participation in or denying them the benefits of voting. *See Bircoll*, 480 F.3d at 1083.

As an initial matter, Plaintiffs attempt to overly narrow the service, program, or activity from which they claim to have been excluded. The benefit that Plaintiffs seek at the end of the day is the opportunity to participate in Alabama's electoral process. Thus, the proper inquiry here is whether Plaintiffs have been excluded from *voting* as a general matter, not from absentee voting, secret voting, or absolutely secret absentee voting. *See Am. Ass'n of People with Disabilities v. Harris*, 647 F.3d 1093, 1107 (11th Cir. 2011) ("As a public program, disabled citizens must be able to participate in the County's *voting program*." (emphasis added)). But even if Plaintiffs' narrower definition of the program, service, or activity were correct, they have not been excluded from any of those programs either.[9]

---

[9] Moreover, if the ADA even covers voting programs at such a level of granularity, then it is unconstitutional. While Congress may "enact prophylactic legislation" pursuant to § 5 of the Fourteenth Amendment "to remedy or prevent unconstitutional discrimination" under the Fourteenth Amendment, this "power is not … unlimited." *Lane*, 541 U.S. at 520. Rather, such legislation must "exhibit[] 'a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end.'" *Id.* (quoting *City of Boerne v. Flores*, 521 U.S. 507, 520). Legislation that is either disproportional or otherwise seeks to do more than "enforce the guarantees of the Fourteenth Amendment" is thus invalid as it exceeds Congress's authority by "work[ing] a 'substantive change in constitutional protections.'" *Id.* at 520-21 (citing *Boerne*, 521 U.S. at 529 (finding Religious Freedom and Restoration Act "out of proportion"); *Fla. Prepaid Postsecondary Ed. Expense Bd. v. College Savings Bank*, 527 U.S. 627 (1999) (Patent Remedy Act's "apparent aim" was to provide uniform patent infringement remedy rather than "to enforce the guarantees of the Fourteenth Amendment"); *Garrett v. Bd. of Regents of Univ. of Ala.*, 531 U.S. 356 (2001) (holding Title I of the ADA exceeded § 5 authority as applied to public employment). *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62 (2000) (finding Age Discrimination in Employment Act exceeded § 5 authority); *United States v. Morrison*, 529 U.S. 598 (2000) (finding Violence Against Women Act exceeded § 5 authority). It's true that Congress considered the

17

First, there is no allegation that Plaintiffs have been or will be excluded from voting generally. Plaintiffs admit that not only are they able to vote and have voted in the past, Doc. 1 ¶¶ 22, 28, but also that Alabama makes specific accommodations for blind and print disabled voters, *id.* ¶¶ 37-38, 41. In the 2020 general election, Plaintiff Rossiter voted in person, Doc. 1 ¶ 22; Plaintiff Peebles voted by absentee ballot, *id.* ¶ 28, and only Plaintiff Smith did not vote because she neither applied for an absentee ballot nor arranged transportation to the polls on election day; *id.* ¶¶ 15-16. Indeed, Plaintiffs make clear that they "intend to vote in future elections" and that their "*preference*"—not a requirement for them to vote—"is to vote absentee." *See, e.g.*, *id.* ¶ 23.

Plaintiffs' own allegations show that they have not been excluded from voting, they just want to vote some other way. *Cf. McDonald v. Bd. of Election Comm'rs of Chicago*, 394 U.S. 802, 807-08 (1969) (rejecting pretrial detainees' claim that denying them absentee ballots violated the Equal Protection Clause because "the absentee statutes, which are designed to make voting more available to some groups who cannot easily get to the polls, do not themselves deny appellants

---

exclusion of disabled voters from voting when Title II, including the inaccessibility of polling places or disenfranchisement on grounds of mental illness "without regard to individual capacity." *Id.* at 524-25 & n.13. But Congress's broad consideration of absolute exclusion from voting when enacting the ADA cannot justify Plaintiffs' granular relief focused on absolute secrecy in absentee voting. Such relief is simply not congruent and proportional to the sorts of problems that Congress considered in passing the ADA. Accordingly, if the ADA were construed to reach programs narrower than voting generally, it would exceed Congress's § 5 enforcement powers and thus be unconstitutional as applied.

the exercise of the franchise"). Because Plaintiffs are "able to participate in [Alabama's] voting program," they have not been excluded from that program and thus they fail to state a prima facie claim under either the ADA or Rehab Act. *Harris*, 647 F.3d at 1107.

Nor have Plaintiffs been excluded from absentee voting more specifically. In fact, Alabama law allows all voters with disabilities, including Plaintiffs, to vote absentee. ALA. CODE §§ 17-11-3, 3.1. Plaintiffs have the same access to absentee ballot voting as any other qualified absentee voter, which the Complaint acknowledges. *See, e.g.*, Doc. 1 ¶¶ 11, 18, 25 (alleging that each Plaintiff is eligible to vote absentee).

Providing third-party assistance to voters is an equally effective means of participating in elections. The Eleventh Circuit concluded that the use of "third party assistance to disabled voters" affords "an equal opportunity to participate in and enjoy the benefits of voting." *Am. Ass'n of People with Disabilities v. Harris*, 647 F.3d 1093, 1108 (11th Cir. 2011) (quoting district court with approval). And the United States Department of Justice's Civil Rights Division also has expressly rejected Plaintiffs' interpretation of the ADA and Rehab Act in a 1993 findings letter to Pinellas County, Florida:

> Although providing assistance to blind voters does not allow the individual to vote without assistance, it is an effective means of enabling an individual with a vision impairment to cast a ballot. Title II requires a public entity to provide equally effective communications to

individuals with disabilities, but 'equally effective' encompasses the concept of equivalent, as opposed to identical, services. Poll workers who provide assistance to voters are required to respect the confidentiality of the voter's ballot, and the voter has the option of selecting an individual of his or her choice to provide assistance in place of poll workers. The Supervisor of Elections is not, therefore, required to provide Braille ballots or electronic voting in order to enable individuals with vision impairments to vote without assistance.

Letter of Findings from the Chief of the Coordination and Review Section, Civil Rights Division, U.S. Department of Justice (Aug. 25, 1993), https://www.justice.gov/crt/americans-disabilities-act-letters-findings (link to download at table of contents entry 18). The same reasoning applies here. Whether Plaintiffs receive assistance at the polls or in their homes, they are receiving the equally effective service of *voting.*

Plaintiffs are in no different position than the many voters who require assistance to cast ballots—whether in-person or absentee—either because of a disability, a lack of education, or any other reason. While Alabama law protects the secrecy of a voters' ballots, *see* ALA. CODE § 17-6-34, it also authorizes voters to receive assistance in completing those ballots, *see, e.g.*, ALA. CODE § 17-9-13. The Alabama Supreme Court has never considered whether tension exists between such provisions, but this Court recognized over half a century ago that "the right to a secret ballot provided by the State of Alabama is subject to certain practical limitations where such secrecy is impossible, as in the case of an illiterate asking assistance or a person voting by absentee ballot." *United States v. Exec. Comm. of*

*Democratic Party of Greene Cnty.*, 254 F. Supp. 543 (N.D. Ala. 1966). Plainly, any entitlement to a secret ballot under Alabama law must occasionally yield to the reality of such practical limitations—as in Plaintiffs' situations here.[10] In other words, Alabama does not offer a program of *absolute* secret voting under all circumstances. The fact that Plaintiffs may not be able to vote an absentee ballot without third-party assistance does not mean that they have been denied equally effective access to voting generally or to absentee voting specifically.

The Eleventh Circuit recognized as much in *Harris*. 647 F.3d at 1107-08. There, plaintiffs challenged the lack of voting machines in Florida that would allow them to cast a ballot without assistance, thus claiming that their right to cast a direct and secret ballot had been violated. *Id.* at 1096-98. But the Eleventh Circuit, although vacating the district court's injunction, concluded that its unappealed finding that third-party assistance "afforded [plaintiffs] an equal opportunity to enjoy the benefits of voting" showed that plaintiffs' "rights under the ADA have not been abused." *Id.* at 1108.

And the Sixth Circuit recognized the same in affirming dismissal of claims similar to those here. *See Nelson v. Miller*, 170 F.3d 641 (6th Cir. 1999). There, the

---

[10] And to the extent that the scope of Alabama's ballot secrecy provisions remains unclear, this Court may certify a question to the Supreme Court of Alabama. Importantly, Plaintiffs do not allege that Secretary Merrill is in violation of Alabama law related to ballot secrecy. Nor could they. This Court does not have jurisdiction to order State officials to follow State law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).

21

Sixth Circuit rejected plaintiffs' contention that they were entitled to "absolute secrecy from everyone in all instances" by reading the Michigan Constitution's right to a secret ballot in harmony with Michigan statutes providing that voters may receive assistance to complete their ballots. *Id.* at 651-53; *see also id.* at 650 ("Appellants essentially must show that the Michigan legislature, by providing blind voters with third-party voting aid, rather than unassisted voting aid, has violated the Michigan Constitution's mandate that it 'enact laws to . . . preserve the secrecy of the ballot,' MICH. CONST. art. 2, § 4."). Thus, the Sixth Circuit held that "refusing to provide [plaintiffs] with voting assistance other than that already extended to them under [the Michigan voter assistance statute] does not discriminate against them in violation of the ADA and/or the RA." *Id.* at 653.

As a result, Plaintiffs are not excluded from voting or any of the other narrower "programs" they may contend require federal intervention. They may vote in-person either with or without assistance or by absentee ballot with the assistance of a person of their choosing. It bears repeating that neither the ADA nor the Rehab Act "require States to employ any and all means to make [public] services accessible to persons with disabilities." *Lane*, 541 U.S. at 531-32. The ADA and Rehab Act thus certainly do not require States to reach some bar higher than accessibility. Yet Plaintiffs' claims at the end of the day are not that voting is not accessible, but rather that they cannot vote by their preferred method. But because Alabama's

22

administration of voting—and even of absentee voting—is accessible to Plaintiffs, they have not been excluded as required to state a prima facie case under either the ADA or Rehab Act. Accordingly, Plaintiffs' claims fail as a matter of law and should be dismissed.

### D. Plaintiffs' claim under the Rehab Act is due to be dismissed because there is no allegation of discrimination based solely on disability and there is no specific allegation about federal funding.

To state a claim under the Rehab Act, a plaintiff must allege facts establishing four elements: he (1) is disabled under the Rehab Act, (2) was "otherwise qualified" for a program or activity, (3) was excluded from the program or activity solely because of the disability, and (4) sought to use a program or activity "operated by an agency that receives federal financial assistance." *Harris v. Thigpen*, 941 F.2d 1495, 1522 (11th Cir. 1991).

"Discrimination claims under the ADA and the Rehabilitation Act are governed by the same standards." *J.S., III v. Houston Cty. Bd. of Educ.*, 877 F.3d 979, 985 (11th Cir. 2017). "Cases decided under the Rehabilitation Act are precedent for cases under the ADA, and vice-versa." *Cash v. Smith*, 231 F.3d 1301, 1305 n.2 (11th Cir. 2000). However, there are differences between the two Acts: plaintiffs claiming intentional discrimination under the Rehab Act must show that they were discriminated against "*solely* by reason of [their] disability," 29 U.S.C. § 794(a) (emphasis added), while the ADA requires only the lesser "but for" standard of causation. *See Schwarz v. City of Treasure Island*, 544 F.3d 1201, n.6 (11th Cir. 2008).

The Complaint makes no allegation—let alone a plausible factual allegation—that Plaintiffs were discriminated against *solely* by reason of their disability. Because the Complaint fails to include any allegation supporting a necessary element of Plaintiffs' claim, Plaintiffs' claim under the Rehab Act is due to be dismissed.

Another distinction between the ADA and the Rehab Act is that the ADA applies to any "public entity," 42 U.S.C. § 12132, while the Rehab Act applies only to those programs or activities that receive "federal financial assistance," 29 U.S.C. § 794. To state a claim under the Rehab Act, "a plaintiff must allege that the specific program or activity with which he or she was involved receives or directly benefits from federal financial assistance." *Lightbourn v. Cnty. of El Paso, Tex.*, 118 F.3d 421, 427 (5th Cir. 1997). "[C]ourts interpret the phrase 'program or activity' to only cover all the activities of the department or the agency receiving federal funds." *McMullen v. Wakulla Cnty. Bd. of Cnty. Commissioners*, 650 F. App'x 703, 707 (11th Cir. 2016) (quoting *Arbogast v. Kan., Dep't of Labor*, 789 F.3d 1174, 1184 (10th Cir.2015)).

Plaintiffs here make only the conclusory allegation that the Secretary "is an agency or instrumentality of the state of Alabama and receives federal financial assistance." Doc. 1 ¶ 97. The Complaint contains no allegation that any specific program, service, or activity receives federal funding as required to state a claim under the Rehab Act. *See McMullen*, 650 F. App'x at 707; *see also Mason v. City of*

24

*Huntsville, Ala.*, No. CV-10-S-02794-NE, 2012 WL 4815518, at *5 (N.D. Ala. Oct.
10, 2012) (dismissing Rehab Act claim where plaintiff broadly alleged the existence
of federal funding but did not specifically "allege that the city-owned and operated
facilities" received federal funding). Because the Complaint here includes no factual
allegations related to the federal funding of a specific program, service, or activity,
Plaintiffs' claim under the Rehab Act is due to be dismissed.

## CONCLUSION

For the foregoing reasons, Secretary Merrill respectfully ask that this Court
dismiss Plaintiffs' claims.

Respectfully submitted,

Steve Marshall
 *Attorney General*

s/ A. Reid Harris
James W. Davis (ASB-4063-I58J)
 *Deputy Attorney General*
A. Reid Harris (ASB-1624-D29X)
Brenton M. Smith (ASB-1656-X27Q)
 *Assistant Attorneys General*
OFFICE OF THE ATTORNEY GENERAL
501 Washington Avenue
Montgomery, Alabama 36130-0152
Telephone: 334.35.8674
Facsimile:  334.353.8400
Jim.Davis@AlabamaAG.gov
Reid.Harris@AlabamaAG.gov
Brenton.Smith@AlabamaAG.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 13, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

s/ A. Reid Harris
***Counsel for Secretary Merrill***
