FILED
2022 Aug-12  AM 09:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**

| | |
|---|---|
| The NATIONAL FEDERATION OF THE BLIND OF ALABAMA, GAIL SMITH, JILL ROSSITER, and ERIC PEEBLES, <br><br> *Plaintiffs*, <br><br> vs. <br><br> JOHN H. MERRILL *in his official capacity as Secretary of State of Alabama*, <br><br> *Defendant*. | **Case No.: 22-cv-00721-CLM** |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .............................................................................................. ii

INTRODUCTION ........................................................................................................... 1

I.     Plaintiffs Have Standing to Sue Secretary Merrill and He Is a Proper Defendant. ............ 1

     A.     Secretary Merrill Controls the Electronic Ballot System to Which
Plaintiffs Seek Access. .............................................................................................. 2

     B.     Secretary Merrill is Also Responsible for Voting in General, Accessible
Voting, and Implementing New Voting Systems. ................................................ 6

II.     The ADA and Section 504 Preempt Contrary Alabama Election Law. ............................ 8

III.     Requiring Alabama to Comply with Federal Law Is Not a Fundamental Alteration. ...... 13

IV.     Plaintiffs Properly Allege That They Have Been Discriminated Against In
Absentee Voting.................................................................................................... 15

     A.     Denying Plaintiffs Private and Independent Absentee Voting Violates
the ADA and Section 504. ...................................................................................... 18

     B.     Plaintiffs Properly Allege a Section 504 claim.................................................... 21

          1.     Plaintiffs Adequately Allege that the Secretary of State Receives
Federal Funding. .......................................................................................... 21

     C.     Plaintiffs Sufficiently Allege Discrimination on the Basis of Disability.............. 24

CONCLUSION............................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Alabama-Tombigbee Rivers Coal. v. Norton*,
  338 F.3d 1244 (11th Cir. 2003) ............................................................. 2, 3

*Alexander v. Choate*,
  469 U.S. 287 (1985) ............................................................................ 16

*Am. Ass'n of People with Disabilities v. Harris*,
  647 F. 3d 1093 (11th Cir. 2011) ....................................................... 13, 21

*Am. Council of the Blind of Ind. v. Ind. Election Comm'n*,
  2022 WL 702257 (S.D. Ind. 2022) ......................................................... 17

*Am. Council of the Blind v. Paulson*,
  525 F.3d 1256 (D.C. Cir. 2008) ............................................................ 19

*Arizona v. Inter Tribal Council of Arizona, Inc.*,
  570 U.S. 1 (2013) .............................................................................. 9, 10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................ 24

*Astralis Condo. Ass'n v. HUD*,
  620 F.3d 62 (1st Cir. 2010) .................................................................... 8

*Barden v. City of Sacramento*,
  292 F.3d 1073 (9th Cir. 2002) ............................................................... 12

*Bennett v. Spear*,
  520 U.S. 154 (1997) .............................................................................. 2

*Bircoll v. Miami-Dade Cnty.*,
  480 F.3d 1072 (11th Cir. 2007) ............................................................. 10

*Bledsoe v. Palm Beach Cnty. Soil & Water Conservation Dist.*,
  133 F.3d 816 (11th Cir. 1998) ............................................................... 10

*Bowers v. Nat'l Collegiate Athletic Ass'n*,
  9 F.Supp.2d 460 (D.N.J. 1998) ............................................................. 14

*Brown v. Sibley*,
  650 F.2d 760 (5th Cir. 1981) ................................................................. 22

*Buckman Co. v. Plaintiffs' Legal Comm.*,
  531 U.S. 341 (2001) ............................................................................ 10

*Cal. Council of the Blind v. Cnty. of Alameda,*
    985 F. Supp. 2d 1229 (N.D. Cal. 2013) .......................................................... 12, 19

*Common Cause Georgia v. Billups,*
    554 F.3d 1340 (11th Cir. 2009)............................................................................. 1

*Crosby v. Nat'l Foreign Trade Council,*
    530 U.S. 363 (2000) .............................................................................................. 8

*Crowder v. Kitagawa,*
    81 F.3d 1480 (9th Cir. 1996)................................................................................. 9

*Disabled in Action v. Bd. of Elections in N.Y.,*
    752 F.3d 189 (2d Cir. 2014)................................................................................. 17

*Doe v. Rowe,*
    156 F. Supp. 2d 35 (D. Me. 2001)....................................................................... 13

*Graham v. R.J. Reynolds Tobacco Co.,*
    857 F.3d 1169 (11th Cir. 2017)............................................................................. 8

*Gregory v. Ashcroft,*
    501 U.S. 452 (1991) ............................................................................................ 11

*Grove City College v. Bell,*
    465 U.S. 555 (1984) ............................................................................................ 21

*Henderson v. Thomas,*
    913 F.Supp.2d 1267 (N.D. Ala. 2012) ................................................................ 14

*Henrietta D. v. Bloomberg,*
    331 F.3d 261 (2d Cir. 2003)................................................................................. 17

*Hernandez v. N.Y. State Bd. of Elections,*
    479 F.Supp.3d 1 (S.D.N.Y., 2020)...................................................................... 17

*Hillman v. Maretta,*
    569 U.S. 483 (2013) .............................................................................................. 8

*Hindel* v. *Husted,*
    875 F.3d 344 (6th Cir. 2017).......................................................................... 8, 13

*Hines v. Davidowitz,*
    312 U.S. 52 (1941) ................................................................................................ 8

*Jacobson v. Florida Secretary of State,*
    957 F.3d 1193 (11th Cir. 2020)......................................................................... 3, 4

*Johnson v. Gambrinus Co./Spoetzl Brewery*,
    116 F.3d 1052 (5th Cir. 1997)..........................................................................14

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) ..........................................................................................2

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*,
    797 F.3d 160 (2d Cir. 2015)............................................................................15

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ......................................................................................1, 2

*Lujan v. Nat'l Wildlife Fed'n*,
    497 U.S. 871 (1990) ..........................................................................................1

*MAO-MSO Recovery II LLC v. Infinity Prop. & Casualty Grp.*,
    2018 WL 1244498 (N.D. Ala. 2018) ................................................................1

*McMullen v. Wakulla Cnty. Bd. of Cnty. Comm'rs.*,
    650 F. App'x 703 (11th Cir. 2016)..............................................................22, 23

*Nat'l Fed'n of the Blind v. Lamone*,
    813 F.3d 494 (4th Cir. 2016)...........................................................8, 16, 19, 21

*Nelson v. Miller*,
    170 F.3d 641 (6th Cir. 1999)...........................................................................21

*New York ex rel. Spitzer v. Cnty. of Delaware*,
    82 F. Supp. 2d 12 (N.D.N.Y. 2000) ................................................................13

*Pa. Dep't of Corr. v. Yeskey*,
    524 U.S. 206 (1998) ........................................................................................11

*People First of Alabama v. Merrill*,
    467 F. Supp. 3d 1179 (N.D. Ala. 2020) ..........................................................17

*People First of Alabama v. Merrill*,
    487 F. Supp. 3d 1237 (N.D. Ala. 2020) ........................................................3, 4

*People First of Alabama v. Merrill*,
    491 F. Supp. 3d 1076 (N.D. Ala. 2020) ..........................................................12

*Quinones v. City of Evanston*,
    58 F.3d 275 (7th Cir. 1995)...............................................................................9

*Reeves v. Comm'r, Ala. Dep't of Corrections*,
    23 F.4th 1308 (11th Cir. 2022)..........................................................................1

*Rice v. Santa Fe Elevator Corp.*,
   331 U.S. 218 (1947) ................................................................... 10

*Sedima, S.P.R.L. v. Imrex Co.*,
   473 U.S. 479 (1985) ................................................................... 11

*Steimel v. Wernert*,
   823 F.3d 902 (7th Cir. 2016) .................................................... 14

*Tenn. Valley Auth. v. EPA*,
   278 F.3d 1184 (11th Cir. 2002) ................................................. 2

*Tennessee v. Lane*,
   541 U.S. 509, 524 (2004) ......................................................... 12

*United Spinal Ass'n v. Bd. of Elections in N.Y.*,
   882 F. Supp. 2d 615 (S.D.N.Y. 2012) ..................................... 17

*United States v. Gradwell*,
   243 U.S. 476 (1917) ................................................................... 9

*WildEarth Guardians v. Conner*,
   920 F.3d 1245 (10th Cir. 2019) ................................................. 3

*Williams v. City of Texarkana*,
   861 F. Supp. 771 (W.D. Ark. 1993) .......................................... 3

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) .................................................... 15

**Constitutional Provisions**

U.S. Const. art. VI, cl. 2 ................................................................... 8

**Statutes**

29 U.S.C. § 794 ............................................................... 1, 21, 22

42 U.S.C. § 12101 ............................................................... 10

42 U.S.C. § 12131 ................................................................. 1

42 U.S.C. § 12132 ............................................................... 18

52 U.S.C. § 20302 ............................................................... 15

52 U.S.C.A. § 20302 ............................................................. 4

Ala. Code § 17-1-3 ................................................................. 6

Ala. Code § 17-2-4 ........................................................................................................ 6

Ala. Code § 17-4.33 ...................................................................................................... 6

Ala. Code § 17-4-35 ...................................................................................................... 5

Ala. Code § 17-4-60 ...................................................................................................... 7

Ala. Code § 17-4-63 ...................................................................................................... 7

Ala. Code § 17-6-24 ...................................................................................................... 6

Ala. Code § 17-6-34 .................................................................................................... 20

Ala. Code § 17-7-27 ...................................................................................................... 7

Ala. Code § 17-7-29 ...................................................................................................... 7

Ala. Code § 17-10-2 ...................................................................................................... 6

Ala. Code § 17-11-19 .................................................................................................... 6

Ala. Code § 17-11-3 ............................................................................................. 5, 6, 15

Ala. Code § 17-11-3.1 .................................................................................................. 15

Ala. Code § 17-11-4 ................................................................................................... 5, 6

Ala. Code § 17-11-42 .................................................................................................... 5

Ala. Code § 17-11-43.1 ................................................................................................. 5

Ala. Code § 17-11-45 .................................................................................................... 5

Ala. Code § 17-11-48 .................................................................................................... 5

Ala. Code § 17-11-49 .................................................................................................... 6

Ala. Code § 17-11-5 ...................................................................................................... 5

Ala. Code § 17-11-51 .................................................................................................... 6

Ala. Code § 17-12-2 ...................................................................................................... 6

Ala. Code § 17-12-9 ...................................................................................................... 6

Civil Rights Restoration Act of 1987, Pub. L. No. 100-259, 102 Stat. 28 ................................... 21

**Regulations**

28 C.F.R. Part 35 ...................................................................................................... 1, 20

28 C.F.R. § 35.130 ......................................................................................... 6, 7, 14, 18, 19

28 C.F.R. § 35.160 .............................................................................................. 7, 18, 20, 21

28 C.F.R. § 35.164 ....................................................................................................... 13, 14

28 C.F.R. § 41.51 .................................................................................................................. 18

28 C.F.R. § 42.503 ............................................................................................................... 24

**Legislative History**

135 Cong. Rec. S10765-01,  S10793, 1989 WL 183216 (daily ed. Sept. 7, 1989) ...................... 11

135 Cong. Rec. S4979-02, S4985, 1989 WL 175277 (daily ed. May 9, 1989) ........................... 11

**Other Authorities**

2010 Guidance and Section-by-Section Analysis, Subpart E, Communications,
    Section 35.160 ........................................................................................................... 20

*2020 Help America Vote Act (HAVA) Election Security Grant Program Narrative 3*
    (Apr. 14, 2020) ........................................................................................................... 23

*Absentee Voting Information*, Ala. Sec'y of State ........................................................ 4

*Alabama 2021–2022 EAC Progress Report* (Jun. 9, 2022) ......................................... 23

Letter of Findings from the Chief of the Coordination and Review Section, Civil
    Rights Division, U.S. Dep't of Justice at 2 (Aug. 25, 1993) .................................. 20

*Military & Overseas Absentee Voting*, Ala. Sec'y of State ......................................... 15

U.S. Dep't of Justice, *ADA Checklist for Polling Places* (2016) ................................ 12

U.S. Dep't of Justice, *ADA Update: A Primer for State and Local Governments* (2015) ............ 18

U.S. Dep't of Justice, *The Americans with Disabilities Act and Other Federal Laws
    Protecting the Rights of Voters with Disabilities* (2016) ........................................ 12

## INTRODUCTION

Plaintiffs are eligible for absentee voting in Alabama because they have vision and print disabilities. Alabama offers absentee voting through an electronic system that is accessible to voters with vision and print disabilities, but it does not allow those voters to use it. Instead, Alabama only allows voters who are overseas or in the military to use the accessible electronic voting system. Plaintiffs seek only what Defendant already offers to overseas and military voters—accessible electronic ballots. Such access is required in order to provide voters with vision and print disabilities the same private and independent voting offered to nondisabled voters, as required by Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*, 28 C.F.R. Part 35, and Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794 *et seq.*

## I.     Plaintiffs Have Standing to Sue Secretary Merrill and He Is a Proper Defendant.

Despite Defendant's contentions to the contrary, Plaintiffs have standing to sue Secretary Merrill and he is a proper defendant in this case. When considering a motion to dismiss for lack of jurisdiction, "general factual allegations . . . may suffice" because the court "presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (alteration in original) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)); *Reeves v. Comm'r, Ala. Dep't of Corrections*, 23 F.4th 1308, 1317 (11th Cir. 2022) (quoting *Lujan*, 504 U.S. at 561); *MAO-MSO Recovery II LLC v. Infinity Prop. & Casualty Grp.*, 2018 WL 1244498, at *3 (N.D. Ala. 2018).

To assert Article III standing, Plaintiffs must have (1) suffered an injury in fact, (2) that is fairly traceable to the defendant, and (3) that is likely to be redressed by a favorable decision. *See Common Cause Georgia v. Billups*, 554 F.3d 1340, 1349–50 (11th Cir. 2009). Defendant does

not contest that Plaintiffs have suffered an injury, but argues that Plaintiffs' injuries are not traceable to or redressable by Defendant. Def.'s Mot. to Dismiss ( "Def's Mot.") 5, ECF No. 13.

To establish traceability, the injury must be fairly traceable to the defendant's conduct, as opposed to the action of an absent third party. Traceability is distinct from proximate cause, *see Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014), and is satisfied where a defendant's actions might constrain or influence the conduct of third parties, *see Alabama-Tombigbee Rivers Coal. v. Norton*, 338 F.3d 1244, 1254–55 (11th Cir. 2003) ("The 'fairly traceable' requirement does not necessitate 'injury as to which the defendant's actions are the very last step in the chain of causation.'") (quoting *Bennett v. Spear*, 520 U.S. 154, 168–9 (1997)); *Tenn. Valley Auth. v. EPA*, 278 F.3d 1184, 1207 (11th Cir. 2002), *opinion withdrawn in part on other grounds sub nom. Tenn. Valley Auth. v. Whitman*, 336 F.3d 1236 (11th Cir. 2003).

To satisfy redressability, a defendant need not be able to provide complete relief to Plaintiffs. *Lujan*, 504 U.S. at 569 n.4. Although redressability "must not be speculative, it need only be 'likely,' not certain." *Alabama-Tombigbee Rivers Coal.*, 338 F.3d at 1256 (quoting *Tenn. Valley Auth.*, 278 F.3d at 1207). Plaintiffs' allegations more than suffice to establish their standing to challenge the Secretary's failure to implement an accessible absentee voting system.

## A.    Secretary Merrill Controls the Electronic Ballot System to Which Plaintiffs Seek Access.

Plaintiffs' injuries are both fairly traceable to and redressable by Defendant because he controls the electronic absentee ballot system to which Plaintiffs seek access. He is also responsible for the rules governing absentee voting, for ensuring Alabama's election system accommodates individuals with disabilities, and for all new voting systems. The fact that other officials, such as Absentee Election Managers, are also involved in the chain of implementing the absentee voting program does nothing to change the fact that Defendant is amenable to suit.

Even if local officials will also need to take action to provide local ballot information to Defendant's electronic absentee system, Defendant must first permit them to do so. Without Defendant's action to permit access to the system by voters with print disabilities, county officials cannot provide such access. Here, county officials also have obligations under federal law to accommodate Plaintiffs and, once Defendant permits them to do so, they can be expected to comply with those obligations, making complete redress "likely." *Alabama-Tombigbee Rivers Coal.*, 338 F.3d at 1256; *see also WildEarth Guardians v. Conner*, 920 F.3d 1245, 1261 (10th Cir. 2019); *Williams v. City of Texarkana*, 861 F. Supp. 771, 772 (W.D. Ark. 1993). Even if Secretary Merrill is not the only official involved in implementing the electronic absentee voting system, he is one who must act in order to redress Plaintiffs' injury and he is properly sued here.

Defendant relies on *Jacobson v. Florida Secretary of State*, 957 F.3d 1193 (11th Cir. 2020), to argue that the Secretary is an improper defendant. Def.'s Mot. at 5–7. As an initial matter, in *People First of Alabama v. Merrill*, the district court concluded that "*Jacobson* did not create a bright-line rule that county election officials are always the proper defendants in a claim challenging an election law." *People First of Alabama v. Merrill*, 487 F. Supp. 3d 1237, 1244 n.4 (N.D. Ala. 2020), *reconsideration denied*, 491 F. Supp. 3d 1076 (N.D. Ala. 2020), *appeal dismissed sub nom. People First of Alabama v. Sec'y of State for Alabama*, No. 20-13695-GG, 2020 WL 7038817 (11th Cir. Nov. 13, 2020), and *appeal dismissed sub nom. People First of Alabama v. Sec'y of State for State of Alabama*, No. 20-13695-GG, 2020 WL 7028611 (11th Cir. Nov. 16, 2020) ("*People First I*").

In addition, *Jacobson* is readily distinguishable from this case. The *Jacobson* plaintiff asked for an injunction forcing the Florida Secretary of State to change the order of candidates on ballots. But Florida law was clear that the Secretary had no role in designing ballots. *See*

*Jacobson*, 957 F.3d at 1208. Here, by contrast, Secretary Merrill's role in implementing absentee voting is materially different from that of the Florida Secretary of State with respect to candidate ballot order at issue in *Jacobson*. As discussed above, Secretary Merrill controls the electronic absentee ballot system to which Plaintiffs seek access. The Eleventh Circuit's decision in *Jacobson* therefore does not control here.

The facts here are also distinguishable from *People First I*, in which a court reluctantly determined that Secretary Merrill was not a proper defendant in an action challenging Alabama's witness requirement. There, Judge Kallon reasoned that Secretary Merrill had no direct authority over the county officials who enforced the witness requirement. *See People First I*, 487 F. Supp. 3d at 1244 n.4 (finding the Secretary's "power to prescribe rules and issue directives" about the challenged laws insufficient to establish traceability and redressability) (quoting *Jacobson*, 957 F.3d at 1211). Here, Plaintiffs request a different type of relief, and their injuries are both traceable to Defendant and can be redressed by him because he controls access to the electronic absentee voting system. Defendant already offers electronic ballots to overseas voters. *See Absentee Voting Information*, Ala. Sec'y of State, https://www.sos.alabama.gov/alabama-votes/voter/absentee-voting (last visited Aug. 9, 2022). Defendant offers this option as the state's chosen method of complying with the requirements of the Uniformed and Overseas Citizens Absentee Voting Act/Military and Overseas Voter Empowerment Act ("UOCAVA/MOVE"). *See* 52 U.S.C.A. § 20302(a)(7) (establishing requirement that states create procedures for overseas voters to request and receive their ballots electronically). Unlike a print disabled Alabama voter, as discussed below, an Alabama overseas voter can request, receive, mark, and return that voter's ballot in electronic format.

Plaintiffs request that they, as individuals with print disabilities, be allowed to use this same ballot system. State law explicitly makes the Secretary responsible for implementing the overseas absentee voting program. Ala. Code § 17-4-35(14) (Secretary of State's Supervisor of Voter Registration is responsible for "provid[ing] military and overseas voters with voter registration applications and absentee ballot applications and otherwise assist[ing] such voters with information helpful in becoming registered, changing registration, and obtaining absentee ballots"); § 17-11-4 ("The Secretary of State shall provide applications for absentee voting to military and overseas voters . . . ."); § 17-11-5(d) ("[T]he Secretary of State, by rule, shall prescribe use of standardized military and overseas voter registration applications and applications for absentee ballots adopted by the United States government."); § 17-11-42 (Secretary of State responsible for promulgating rules for electronic overseas absentee voting); § 17-11-43.1; § 17-11-45 (return of overseas absentee ballots); § 17-11-48 (processing of voted overseas absentee ballots). As Defendant notes in his brief, "[t]he United States has sued Alabama multiple times to enforce the Uniformed and Overseas Citizen Absentee Voting Act." Def.'s Mot. 16 n.7. Notably absent from Defendant's brief is an explanation for why he is the proper defendant in these cases but not here.

Nor is domestic absentee voting so separate a system that it is not within the control of Defendant. Overseas absentee voting is simply a type of absentee voting. *See, e.g.*, Ala. Code § 17-11-4 ("The Secretary of State shall provide applications for absentee voting to military and overseas voters . . . ."). Voters may apply for and vote by absentee ballot in the manner "determined by rule by the Secretary of State." Ala. Code § 17-11-3. The Secretary of State is responsible for many aspects of domestic absentee voting, including "adopt[ing] requirements related to witnessing or notarization of absentee ballots, voter identification,

candidate qualifying, and ballot access procedures, ballot printing, and the application process for absentee balloting," Ala. Code § 17-11-49(a); prescribing and designing the form for requesting an absentee ballot, § 17-11-4; providing it to local absentee election managers, Ala. Code § 17-11-3; overseeing the shipping and delivery of absentee envelopes and ballots, § 17-11-19; and paying expenses, § 17-11-51. Thus, Secretary Merrill is the proper defendant in this action to allow people with disabilities access to Alabama's electronic absentee voting program.

### B.    Secretary Merrill is Also Responsible for Voting in General, Accessible Voting, and Implementing New Voting Systems.

The Secretary of State has the power to provide the relief Plaintiffs seek in this case. As the "chief elections official in the state," it is the Secretary of State's responsibility to "provide uniform guidance for election activities." Ala. Code § 17-1-3.[1] In implementing the Election Code to achieve such uniformity, the Secretary must not, *inter alia*, "afford a qualified individual with a disability an opportunity to participate in or benefit from [the] aid[s], benefit[s], or service[s] that is not equal to that afforded others." 28 C.F.R. § 35.130(b)(1)(ii). The Secretary also may not "utilize criteria or methods of administration: (i) [t]hat have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability," *id.* § 35.130(b)(3)(i), or "impose or apply eligibility criteria that screen out" people with disabilities, *id.* § 35.130(b)(8), when issuing directives, distributing election materials, and protecting voting rights. He must also "make reasonable modifications in policies, practices, or

---

[1] *See also, e.g.*, Ala. Code § 17-2-4(f) ("The Secretary of State, by administrative rule, shall adopt uniform and nondiscriminatory standards that define what constitutes a vote and what will be counted as a vote for each category of voting system in the state."); § 17-4.33 (Secretary of State maintains "nondiscriminatory, single, uniform, official" voter registration list); § 17-6-24(b) (Secretary of State responsible for "ballot style and design."); § 17-10-2(h) (Secretary of State responsible for setting rules for provisional ballots); § 17-12-2 and § 17-12-9 (Secretary of State designates the form of reporting election results and receives election results).

procedures," *id.* § 35.130(b)(7)(i), and "furnish appropriate auxiliary aids and services," *id.* § 35.160(b)(1), to afford disabled individuals equal opportunity to participate.

The Secretary of State is also responsible for implementing state and federal election laws to help disabled voters. Ala. Code § 17-4-60(h); § 17-4-63 (Secretary of State is primary official for implementation of Help America Vote Act).

Finally, it has always fallen to the Secretary of State to devise, execute, and oversee any new voting systems developed in response to expanding needs and technologies. For example, when the Alabama legislature saw fit to explore electronic voting, it empowered the Secretary of State—not county election officials—to "implement a uniform system of electronic voting in any county participating in the pilot project," Ala. Code § 17-7-27, and to approve any counties participating in the final program, *id.* § 17-7-29. Likewise, it must fall to the Secretary to implement a uniform system of electronic absentee voting for individuals with print disabilities.

Individual county probate judges and Absentee Election Managers have a role in administering the absentee voting system the Secretary of State devises, but they have neither the practical ability nor the legal authority to provide access to the accessible electronic absentee ballot system sought here or to oversee its standardized rollout. That ability and authority belongs to the Secretary of State. The Secretary of State can, and must, implement that absentee ballot system for use by voters with disabilities statewide in a way that complies with the ADA and Section 504—which is what Plaintiffs seek here.

It defies law and logic to suggest that the Secretary of State—who is responsible for the uniformity of absentee voting statewide and who manages the electronic absentee ballot program to which Plaintiffs seek access—is incapable of providing redress in the form of access to the electronic absentee ballot program for voters with vision and print disabilities. In short, Alabama

already has an accessible absentee voting system. Plaintiffs request that they be permitted to use it. Secretary Merrill is the person with the power to make that happen.

## II.    The ADA and Section 504 Preempt Contrary Alabama Election Law.

The ADA's and Section 504's requirements are "the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Alabama law must give way "to the extent of any conflict with a federal statute." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372, 388 (2000). Such a conflict exists where, as here, Alabama law "stands as an obstacle to the accomplishment and execution of," the mandates of the ADA and Section 504. *Id*. at 372–73, 377, 385 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)); *Graham v. R.J. Reynolds Tobacco Co.*, 857 F.3d 1169, 1186 (11th Cir. 2017) (State law is preempted "when compliance with both federal and state regulations is impossible or when state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'") (quoting *Hillman v. Maretta*, 569 U.S. 483, 490 (2013)); *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 508 (4th Cir. 2016) ("[D]efendants' argument—that the mere fact of a state statutory requirement insulates public entities from making otherwise reasonable modifications to prevent disability discrimination—cannot be correct.").

Under the Supremacy Clause, circuit courts have consistently ruled that federal disability rights laws, including the ADA, preempt conflicting state laws, including in the area of voting. *See, e.g.*, *Hindel* v. *Husted*, 875 F.3d 344, 349 (6th Cir. 2017) (state election law did not stand in the way of ADA requirements because "[r]equiring public entities to make changes to rules, policies, practices, or services is exactly what the ADA does"); *Lamone*, 813 F.3d at 508 ("The Constitution's Supremacy Clause establishes that valid federal legislation can pre-empt state [voting] laws"); *Astralis Condo. Ass'n v. HUD*, 620 F.3d 62, 69–70 (1st Cir. 2010) (Fair Housing

Amendments Act preempted any application of Puerto Rican law that would permit

discrimination based on disability); *Crowder v. Kitagawa*, 81 F.3d 1480, 1485 (9th Cir. 1996)

(ADA required modifications to Hawaii's animal quarantine law to extent it interfered with use

of guide dogs); *Quinones v. City of Evanston*, 58 F.3d 275, 279–80 (7th Cir. 1995) (Age

Discrimination in Employment Act's prohibition on aged-based discrimination prevailed over

state law denying pensions to public employees hired after a certain age).

Defendant contends that the ADA's and Section 504's requirements do not preempt

Alabama state law requiring that all votes be cast by paper ballot. Def.'s Mot. 8. Defendant cites

*United States v. Gradwell*, a case from 1917, for the proposition that Congress cannot regulate

elections unless it does so through legislation specifically targeting the conduct of elections. 243

U.S. 476, 485 (1917). He further insists that the Supreme Court "tacitly reaffirmed" *Gradwell*

with its holding in *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013). Def.'s

Mot. 9 n.3. Defendant misunderstands these cases.

Defendant first omits the context of *Gradwell*'s holding that a federal law against

defrauding the United States did not cover election fraud. There, "the provision at issue was

adopted in a tax-enforcement bill," and "Congress had enacted but then repealed *other* criminal

statutes specifically covering election fraud." *Arizona*, 570 U.S. 1 at 13 n.5 (citing *Gradwell*, 243

U.S. at 485). As discussed below, this is far different from the ADA's legislative history.

Defendant also neglects to mention that it is the dissent in *Arizona* that discusses *Gradwell*.

According to Justice Scalia writing for the majority, *Gradwell* "says nothing at all about pre-

emption," and "indeed, it was not even a pre-emption case." 570 U.S. 1 at 13 n.5.

In fact, the case for preemption is stronger when the state law being displaced regulates

*federal* elections. In that context, "the federalism concerns underlying the presumption [against

preemption] in the Supremacy Clause context are somewhat weaker," because "[u]nlike the States' 'historic police powers,'"  the role of states "in regulating congressional elections—while weighty and worthy of respect—has always existed subject to the express qualification that it 'terminates according to federal law,'" *Arizona*, 570 U.S. at 14–15 (quoting *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 347 (2001)).

Defendant leaps from the fact that Congress can regulate elections pursuant to the Elections Clause to the unsupported conclusion that Congress can *only* preempt state election law when it does so via the Elections Clause. This conclusion is manifestly incorrect. Even when the presumption against preemption applies (*i.e.*, when Congress legislates pursuant to something other than the Elections Clause) it can be defeated by a clear statement that Congress intends to preempt state law. *See Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). Congress provided such a statement in the ADA, showing its intent to cover voting and elections. The ADA's Findings specifically state: "discrimination against individuals with disabilities persists in such critical areas as . . . voting, and access to public services." 42 U.S.C. § 12101(a)(3). The ADA thus explicitly identifies voting as a critical area in which the discrimination it intends to eliminate persists. *See* 42 U.S.C. § 12101. Further, the ADA "prohibits all discrimination" on the basis of disability "by a public entity, regardless of the context." *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1084–85 (11th Cir. 2007) (quoting *Bledsoe v. Palm Beach Cnty. Soil & Water Conservation Dist.*, 133 F.3d 816, 822 (11th Cir. 1998)). When Congress enacted the ADA, one of its express purposes was combating discrimination in voting against people with disabilities.[2]

---

[2] Further, the Supreme Court has applied the ADA even in contexts not mentioned in its text. "Assuming [the ADA did not mention prisons], and assuming further that it proves, as petitioners contend, that Congress did not 'envision that the ADA would be applied to state prisoners', in the context of an unambiguous statutory text that is irrelevant. As we have said before, the fact that a statute can be 'applied in situations not expressly anticipated by Congress does not demonstrate

Defendant's reliance on *Gregory v. Ashcroft*, 501 U.S. 452 (1991) is similarly misplaced. There, the Court held that the Age Discrimination in Employment Act ("ADEA") did not pre-empt a Missouri state constitutional provision setting a mandatory retirement age for judges. The Court noted that by its text, "[t]he ADEA plainly covers all state employees *except* those excluded by one of the exceptions." *Id.* at 467 (emphasis added). The ADEA went on to exclude from its coverage "appointees at the policymaking level," which the Court interpreted to encompass state judges. *Id.* at 467. Here, Defendant points to no analogous exceptions to the ADA that might encompass voting and elections—because there are none.

The ADA's legislative history also demonstrates that Congress intended it to apply to voting and elections. During hearings on the ADA, then-Senator Biden read a letter from one of his constituents encouraging Congress to pass the legislation: "Personally, I look forward to the day when I can have an accessible polling place that will accommodate my electric wheelchair. Crawling or hiring an ambulance (as I did during the last general election) isn't really my style." 135 Cong. Rec. S10765-01, S10793, 1989 WL 183216 (daily ed. Sept. 7, 1989) (statement of Sen. Joseph Biden; Americans with Disabilities Act, Proceedings and Debates of the 101st Congress, First Session). Senator Harkin added that the ADA was necessary because, as it stood, federal law did not provide protections for people with disabilities who were being "denied access to voting places for State and local elections and other rights and opportunities made available by State and local governments." 135 Cong. Rec. S4979-02, S4985, 1989 WL 175277 (daily ed. May 9, 1989) (statement of Sen. Tom Harkin).

---

ambiguity. It demonstrates breadth.'" *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 499 (1985)).

Guidance from the U.S. Department of Justice ("DOJ") also applies the ADA to voting. The "ADA Checklist for Polling Places" states that "[t]he ADA's provisions apply to all aspects of voting." U.S. Dep't of Justice, *ADA Checklist for Polling Places* (2016), https://www.ada.gov/votingchecklist.pdf. Another DOJ publication specifically identifies the ADA as a federal law that protects the right to vote. U.S. Dep't of Justice, *The Americans with Disabilities Act and Other Federal Laws Protecting the Rights of Voters with Disabilities* (2016), https://www.justice.gov/file/69411/download. In addition to reiterating that the ADA applies to all aspects of voting, it emphasizes that the ADA "requires state and local governments ('public entities') to ensure that people with disabilities have a full and equal opportunity to vote." *Id.*

Defendant's assertion that the ADA does not apply to elections and voting is at odds with cases from courts in this circuit and across the country. *See, e.g.*, *People First of Alabama v. Merrill*, 491 F. Supp. 3d 1076, 1160 (N.D. Ala. 2020) (evaluating plaintiffs' prima facie case that curbside voting ban violated the ADA), *appeal dismissed sub nom. People First of Alabama v. Sec'y of State for Alabama*, No. 20-13695-GG, 2020 WL 7038817 (11th Cir. Nov. 13, 2020), *and appeal dismissed sub nom. People First of Alabama v. Sec'y of State for State of Alabama*, No. 20-13695-GG, 2020 WL 7028611 (11th Cir. Nov. 16, 2020); *Cal. Council of the Blind v. Cnty. of Alameda*, 985 F. Supp. 2d 1229, 1237 (N.D. Cal. 2013) (considering voting as a "service, program, or activity" covered by the ADA); *Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002) (construing "the ADA's broad language as bringing within its scope anything a public entity does."); *cf. Tennessee v. Lane*, 541 U.S. 509, 524 (2004) (noting that the ADA was enacted against a backdrop of state laws that "categorically disqualified 'idiots' from voting, without regard to individual capacity"); *id.* at 525 (citing *Doe v. Rowe*, 156 F. Supp. 2d

35 (D. Me. 2001), and *New York ex rel. Spitzer v. County of Delaware*, 82 F. Supp. 2d 12

(N.D.N.Y. 2000), as examples discrimination against individuals with disabilities in elections).

In *American Association of People with Disabilities v. Harris*, 647 F. 3d 1093 (11th Cir.

2011), the Eleventh Circuit held that the Florida Secretary of State did not violate the ADA by

failing to provide accessible voting machines to Florida voters with disabilities after the 2000

general election. *Id.* at 1107–08. The court noted that its "conclusion that voting machines are

not 'facilities' does not leave disabled voters in the lurch. As a public program, disabled citizens

must be able to participate in the County's voting program." *Id.* at 1107. If the ADA did not, in

fact, apply to elections at all, not only would the *Harris* holding make no sense, but the *Harris*

plaintiffs would have been left without recourse.

### III. Requiring Alabama to Comply with Federal Law Is Not a Fundamental Alteration.

Defendant argues that using paper ballots is either "fundamental" to its voting system or

an "essential eligibility" requirement. Given that Defendant, in fact, already uses a non-paper

system for overseas absentee voters, this assertion is clearly not true. Alabama is perfectly

capable of sending, receiving, and counting non-paper ballots—it is simply refusing to do so for

voters with vision and print disabilities.

Even if the argument that a paper ballot is "fundamental" to voting in Alabama were

viable, that argument would be an affirmative defense to be pleaded and proven by Defendant,

not an element to be pleaded by Plaintiffs. 28 C.F.R. § 35.164 ("This subpart does not require a

public entity to take any action that *it can demonstrate* would result in a fundamental alteration

in the nature of a service, program, or activity . . . *a public entity has the burden of proving* that

compliance with this subpart would result in such alteration . . . ." (emphasis added)); *Hindel*,

875 F.3d at 348 ("The Secretary of State's mere affirmative-defense allegation is insufficient to

warrant a judgment on the pleadings in his favor because 'a public entity has the burden of

*proving* that compliance with this subpart would result in [a fundamental] alteration.'" (quoting 28 C.F.R. § 35.164)); *see also Johnson v. Gambrinus Co./Spoetzl Brewery*, 116 F.3d 1052, 1059 (5th Cir. 1997) (Under Title III of the ADA, which, like Title II, requires reasonable modifications, defendant bears the burden of pleading and proving a requested accommodation would fundamentally alter the nature of the program). Therefore, the Court cannot reach the merits of Defendant's argument on a motion to dismiss.

Nevertheless, Defendant attempts to skirt his burden by calling Alabama's preference for paper ballots an "essential" eligibility criterion. Def.'s Mot. 12–16. However, Title II clearly states that "[a] public entity shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity *unless such criteria can be shown to be necessary* for the provision of the service, program, or activity being offered." 28 C.F.R. § 35.130(b)(8) (emphasis added). Defendant "bears the heavy burden of showing that the criteria are necessary." *Henderson v. Thomas*, 913 F. Supp. 2d 1267, 1310 (N.D. Ala. 2012); *see also Bowers v. Nat'l Collegiate Athletic Ass'n*, 9 F. Supp. 2d 460, 478 (D.N.J. 1998); *Steimel v. Wernert*, 823 F.3d 902, 916 (7th Cir. 2016). Because Alabama already permits overseas voters to use electronic ballots, Defendant cannot satisfy his burden of showing that paper is "essential."

Defendant's argument that the federal government requires an electronic means of transmitting ballots to overseas voters does not change the argument's status as an affirmative defense not amenable to decision on a motion to dismiss. Nor does Defendant's chosen method of complying with federal law make its preference for paper ballots "fundamental" or "essential." The state still must plead and prove that it is, in fact, fundamental to voting that the ballot be requested, received, marked, and returned in paper format, even though the state

permits overseas voters to request, receive, mark, and return ballots electronically.
Compl. ¶¶ 58–60, 87, ECF No. 1; *see also Military & Overseas Absentee Voting*, Ala. Sec'y of
State,  https://www.sos.alabama.gov/alabama-votes/voter/military-overseas-
voting?_ga=2.122074381.769274933.1659800466-1827181674.1658156356. Notably, the
federal UOCAVA/MOVE Act merely requires an electronic method, such as an emailed pdf, for
voters to request and receive ballots. 52 U.S.C. § 20302(a)(6)(A)–(B) (request) and (7) (receive).
It does not require the state to permit electronic marking or return. Defendant has voluntarily
chosen to permit electronic methods for these functions, undermining its claim that it only allows
electronic formats when required by federal law and that otherwise paper is "essential."

## IV.    Plaintiffs Properly Allege That They Have Been Discriminated Against In Absentee Voting.

Defendant argues that Plaintiffs' exclusion from Alabama's absentee voting program
does not violate federal law because Plaintiffs can still vote in person. As a threshold matter, this
is a fact-specific argument ill-suited for resolution on a motion to dismiss. *See*, *e.g.*, *Loreley Fin.
(Jersey) No. 3 Ltd. v. Wells Fargo Secs.*, *LLC*, 797 F.3d 160, 186 (2d Cir. 2015); *Williams v.
Gerber Prods. Co.*, 552 F.3d 934, 938–39 (9th Cir. 2008). Plaintiff Gail Smith, in fact, alleged
that she did not vote at all in the 2020 general election, partially because she could not confirm
the availability of accessible voting machines at her polling location. *See* Compl. ¶ 16.

Alabama state law recognizes that people with disabilities need to vote absentee and
specifies that they—unlike the general voting population—are eligible to do so because in-
person voting is so difficult for them. Ala. Code §§ 17-11-3, 17-11-3.1. Alabama created an
absentee voting program and acknowledged its necessity for people with disabilities by expressly
making them eligible for the program. Defendant's argument would mean that Alabama is free to
exclude people with disabilities from the absentee voting program it provides for their use by

arguing they can still use the in-person program whose accessibility barriers led to the extension of absentee voting in the first place. The Court should "proceed cautiously to avoid defining a public program so generally that [it] overlook[s] real difficulties" faced by people with disabilities attempting to vote in person. *Lamone*, 813 F.3d at 504.

For people who disproportionately rely on absentee voting, such as people with disabilities, discrimination in the administration of an absentee voting program burdens their right to vote at all. Many people with disabilities, including Plaintiffs, do not merely "prefer" to vote absentee—they are people who otherwise have great difficulty voting or cannot vote at all. Preventing them from voting absentee "effectively denies" them their right to vote. *Alexander v. Choate*, 469 U.S. 287, 301 (1985).

The relevant public program or service in which Plaintiffs face discrimination is private, independent *absentee* voting—not voting generally as Defendant argues. The Supreme Court has counseled against defining the benefit or program at stake "in a way that effectively denies otherwise qualified handicapped individuals the meaningful access to which they are entitled." *Choate*, 469 U.S. at 301. Defendant seeks to do just that.

In *Lamone*, the Fourth Circuit noted that "Title II is disjunctive. By its own terms, it is not limited only to public 'programs'; it applies to 'services, programs, or activities." 813 F.3d at 503. The Court rejected the defendants' proposed focus on voting generally because it was "overbroad and would undermine the purpose of the ADA and its implementing regulations." *Id*. at 504. The Court explained that one of the applicable Title II regulations required reasonable modifications in "policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability . . . clearly contemplates a focus on accessibility at

a more granular level than entire government programs—the level of 'policies, practices, and procedures.'" *Id.* at 504–05 (quoting 28 C.F.R. § 35.130(b)(7)).

Here, too, Alabama denies voters with print disabilities the right to vote absentee without assistance when the technology that would allow those voters an independent and private absentee vote is available and, in fact, is already in use in Alabama. Such a denial violates the ADA. *See People First of Alabama v. Merrill*, 467 F. Supp. 3d 1179, 1222 n.46 (N.D. Ala. 2020) ("The ADA is not so narrow that the plaintiffs' rights only extend to voting 'at some time and in some way.'"); *Disabled in Action v. Bd. of Elections in N.Y.*, 752 F.3d 189, 198–99 (2d Cir. 2014) ("[T]o assume the benefit is . . . merely the opportunity to vote at some time and in some way [] would render meaningless the mandate that public entities may not 'afford [ ] persons with disabilities services that are not equal to that afforded others.'" (alteration in original) (quoting *Henrietta D. v. Bloomberg*, 331 F.3d 261, 274 (2d Cir. 2003))); *United Spinal Ass'n v. Bd. of Elections in N.Y.*, 882 F. Supp. 2d 615, 623–24 (S.D.N.Y. 2012) ("It is abundantly clear that Defendants are obligated to provide a level of access to their voting program beyond the simple assurance that voters with disabilities are able to cast a ballot in some way, shape, or form."); *Hernandez v. N.Y. State Bd. of Elections*, 479 F. Supp. 3d 1, 13 (S.D.N.Y., 2020) ("[I]t would be intolerable and legally incorrect to conclude that the relevant service, program, or activity is voting generally and not absentee voting particularly."); *Am. Council of the Blind of Ind. v. Ind. Election Comm'n*, 2022 WL 702257, at *8 (S.D. Ind. 2022) ("It is not enough to say that voters with print disabilities have *some* method of casting a private and independent vote. Instead, for purposes of this injunction, the relevant program or benefit is absentee voting."). The potential availability of in-person voting does not excuse the violation of federal law in absentee voting.

A.    **Denying Plaintiffs Private and Independent Absentee Voting Violates the ADA and Section 504.**

Excluding people with vision and print disabilities from private, independent absentee voting violates the ADA. Title II covers a broad spectrum of unlawful discrimination in government services, programs, and activities. 42 U.S.C. § 12132. Disability discrimination includes "[a]fford[ing] a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is *not equal* to that afforded others" and "provid[ing] a qualified individual with a disability with an aid, benefit, or service that is *not as effective* in affording equal opportunity to obtain the same result[] [or] gain the same benefit . . . as that provided to others." 28 C.F.R. § 35.130(b)(1)(ii)–(iii) (2016) (emphasis added); 28 C.F.R. § 41.51(b)(1)(ii)–(iii) (Section 504 regulation).

The ADA also requires public entities "to ensure that communications with . . . participants [and] members of the public . . . with disabilities are *as effective as* communications with others." *Id*. § 35.160(a)(1) (emphasis added). Equally effective communication requires public entities to provide "appropriate auxiliary aids and services where necessary to afford individuals with disabilities . . . an *equal opportunity* to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." *Id*. § 35.160(b)(1) (emphasis added).

Importantly, the ADA regulations specifically provide that auxiliary aids and services must "protect the privacy and independence of the individual with a disability." 28 C.F.R. § 35.160(b)(2).[3] Alabama's absentee voting program excludes voters with print

---

[3] Defendant is also required to give "primary consideration" to Plaintiffs' request to use an accessible electronic ballot. 28 C.F.R. § 35.160(b)(2). Defendant "must honor [Plaintiffs'] choice, unless [Defendant] can demonstrate that another equally effective means of communication is available or that the aid or service requested would fundamentally alter the nature of the program, service, or activity or would result in undue financial and administrative burdens." U.S. Dep't of Justice, *ADA Update: A Primer for State and Local Governments* 8 (2015),

disabilities, including Plaintiffs, from voting privately and independently, by requiring them to rely on third parties to read and mark their paper ballots.

Alabama's absentee voting program requires voters to read and fill out a paper ballot in pen, sign an accompanying affidavit, and return the ballot by mail. Unlike voters without disabilities, voters with vision and print disabilities who vote absentee are forced to seek assistance from other persons to fill out their ballots, thus revealing their choices and relying on the care and honesty of third parties. Nondisabled individuals who want to vote absentee can independently complete their ballots, preserving their privacy and control over their vote. Voters with vision and print disabilities who want to vote by mail cannot. Requiring Plaintiffs to obtain assistance to vote by mail "at best provides these individuals with an inferior voting experience 'not equal to that afforded others' . . . [because] [b]lind and visually impaired voters are forced to reveal a political opinion that others are not required to disclose." *Cal. Council of the Blind*, 985 F. Supp. 2d at 1239 (quoting 28 C.F.R. § 35.130(b)(1)(ii)). Forcing people with disabilities "to rely on the honesty and carefulness of sighted individuals" violates federal law. *Am. Council of the Blind v. Paulson*, 525 F.3d 1256, 1270 (D.C. Cir. 2008).

Under similar circumstances, the Fourth Circuit had "little trouble concluding . . . that Maryland's absentee voting program does not provide disabled individuals an 'opportunity to participate . . . equal to that afforded others.'" *Lamone*, 813 F.3d at 506 (quoting 28 C.F.R. § 35.130(b)(1)(ii)). As the court explained, even if there were no "standalone right to vote privately and independently without assistance," having provided such a right to sighted voters,

---

https://www.ada.gov/regs2010/titleII_2010/titleII_primer.pdf. As discussed above, Defendant cannot meet that burden.

the state could not deny it to the blind. *Id*. In Alabama, the right to a secret ballot is enshrined in state law, making Plaintiffs' entitlement to that benefit even more clear. Ala. Code § 17-6-34.

Defendant cites a letter from the Department of Justice from 1993 for the proposition that privacy and independence are not relevant to equally effective communication in the context of voting. The letter, itself, explains the reason for the DOJ's conclusion at that time: "electronic systems of voting by telephone that meet the security requirements necessary for casting ballots are not currently available." Letter of Findings from the Chief of the Coordination and Review Section, Civil Rights Division, U.S. Dep't of Justice at 2 (Aug. 25, 1993), https://www.justice.gov/crt/americans-disabilities-act-letters-findings (link to download at table of contents entry 18). But this reasoning is no longer applicable because technology has evolved and electronic absentee ballot systems that meet the state's security requirements are now both available and actually in use in Alabama.

Moreover, unlike the current ADA Title II regulations, the regulations in place in 1993 did not specify that auxiliary aids and services were required to "protect the privacy and independence of the individual with a disability." 28 C.F.R. § 35.160(b)(2) (2016). That provision was added by regulations that were published on September 15, 2010, and became effective on March 15, 2011. *See* 28 C.F.R. Part 35 Nondiscrimination on the Basis of Disability in State and Local Government Services (as amended by the final rule published on September 15, 2010), § 35.160, https://www.ada.gov/regs2010/titleII_2010/titleII_2010_withbold.htm; *see also* 2010 Guidance and Section-by-Section Analysis, Subpart E, Communications, Section 35.160, https://www.ada.gov/regs2010/titleII_2010/titleII_2010_regulations.htm#a2010guidance ("Section 35.160 in the final rule codifies the Department's longstanding policies in [the area of effective communication] and includes provisions that reflect technological advances in the area

of auxiliary aids and services. * * * The Department has included language in § 35.160(b)(2) stating that '[i]n order to be effective, auxiliary aids and services must be provided . . . in such a way so as to protect the privacy and independence of the individual with a disability.'"). Similarly, the opinion *Nelson v. Miller*, 170 F.3d 641 (6th Cir. 1999), on which Defendant relies, was decided under the previous regulation. Finally, *Harris*, 647 F.3d at 1108, dealt with a lower court decision under the pre-2010 regulations, and did not address the amended regulation's requirements for privacy and independence.

Public entities must "furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities" equally effective communication and equal opportunity. 28 C.F.R. § 35.160(b)(1). The auxiliary aid must ensure equal privacy and independence. Alabama already has established an electronic ballot delivery system for overseas voters that would provide such privacy and independence for voters with print disabilities, and the state has found it to be secure. A system already in use that has been found to be "reasonably secure and reasonably accessible" is clearly an appropriate auxiliary aid. *Lamone*, 813 F.3d at 508.

**B.    Plaintiffs Properly Allege a Section 504 claim.**

**1.    Plaintiffs Adequately Allege that the Secretary of State Receives Federal Funding.**

Section 504 makes it unlawful for any "program or activity" receiving federal financial assistance to discriminate on the basis of disability. 29 U.S.C. § 794. In response to the Supreme Court's decision in *Grove City College v. Bell*, 465 U.S. 555, 570–74 (1984), the Civil Rights Restoration Act of 1987, Pub. L. No. 100-259, 102 Stat. 28, clarified Section 504's broad reach by amending the definition of "program or activity" to include "all of the operations of . . . a department, agency, special purpose district or other instrumentality of a State or of a local government." *Id.*; 29 U.S.C. § 794(b)(1)(A). Under this expanded definition, so long as the

Secretary of State receives federal funding, all programs and activities of his office are covered by Section 504. Plaintiffs properly pleaded that the Secretary receives federal funding. No heightened specificity is required.

Defendant attempts to impose a heightened pleading standard by relying on *Lightbourn v. County of El Paso*, 118 F.3d 421 (5th Cir. 1997). Defendant claims that *Lightbourn* requires the plaintiff to allege that "the specific program or activity with which he or she was involved receives or directly benefits from federal financial assistance." Def's. Mot. 24. But *Lightbourn* relied on *Brown v. Sibley*, 650 F.2d 760 (5th Cir. 1981), a case that predates the Civil Rights Restoration Act. 29 U.S.C. § 794(b)(1); *see also McMullen v. Wakulla Cnty. Bd. of Cnty. Comm'rs.*, 650 F. App'x 703, 705–06. (11th Cir. 2016). This interpretation of Section 504's pleading requirement is no longer good law.

As this Court has found in, *Knight v. State of Alabama*, 787 F. Supp. 1030 (N.D. Ala. 1991), *rev'd in part on other grounds*, 14 F.3d 1534 (11th Cir. 1994), it is sufficient that Plaintiffs identify the entity that receives federal funding. *Id.* at 1365. They need not identify the specific activity offered by that entity. *Id.* at 1364 ("To this end, Congress defined the term 'program or activity' to make clear that when federal financial assistance is extended to part of a college or university, or public system of higher education, all the operations of the institution or educational system are covered, not just the program receiving the federal assistance."). Here, Plaintiffs have adequately pled that Defendant receives federal funding. *See* Compl. ¶ 97.

Even if this Court were inclined to demand the level of specificity required in *Lightbourn*, Plaintiffs have met that standard by alleging that the "Secretary of State is an agency or instrumentality of the state of Alabama and receives federal financial assistance." *Id.* In *Lightbourn*, a case concerning the inaccessibility of polling sites and voting procedures, the

plaintiffs merely alleged that the "general receipt of federal funds by the state of Texas brings the Secretary [of State] within [Section] 504," but they failed to plead that the Secretary of State received federal funds. 118 F.3d at 426–27. Here, by contrast, Plaintiffs allege that the Secretary of State is a direct recipient of federal financial assistance.

Similarly, in *McMullen*, which Defendant cites in support of his argument, Def.'s Mot 24, the plaintiffs alleged that a county—that is, the local government as a whole—received federal funds and, therefore, the discriminatory conduct of the county Fire Rescue Department fell under Section 504. 650 F. App'x at 704–05. The court held that the allegation was insufficient, explaining that the plaintiffs would have had to allege that the Fire Rescue Department received federal funds to make it subject to Section 504. *Id.* at 705–07. Importantly, the court emphasized that it was not necessary that plaintiffs point to federal funds received by a specific division within the Fire Rescue Department. *Id.* Unlike in *McMullen*, Plaintiffs here did not broadly allege that the entire government of the State of Alabama receives federal funds. Plaintiffs referenced federal funds received by the Secretary of State, whose office is a department within the government of the state of Alabama. Under Eleventh Circuit precedent, this allegation is sufficient; Plaintiffs need not allege that any specific division, program, or activity within the office of the Secretary of State receives federal funding.[4]

---

[4] That the Secretary of State receives federal funding for voting activities is not the subject of serious dispute. For example, he recently made expenditures for the benefit of, or directly to, every county in the state using Help America Vote Act funds. *See 2020 Help America Vote Act (HAVA) Election Security Grant Program Narrative 3* (Apr. 14, 2020), https://eac.gov/sites/default/files/paymentgrants/narrative2020/AL_20ES_Program_Narrative.pdf; *Alabama 2021–2022 EAC Progress Report* (Jun. 9, 2022), eac.gov/sites/default/files/paymentgrants/Election%20Security/FY22%20Midyear%20FFR/AL_2022%20Election%20Security%20MidYear%20Financial%20and%20Progress%20Report.pdf.

**C.      Plaintiffs Sufficiently Allege Discrimination on the Basis of Disability.**

Contrary to Defendant's contentions, Plaintiffs do not have to allege that they were discriminated against "solely by reason of" their disabilities, in those precise terms, to sufficiently state a claim under Section 504. Def.'s Mot. 23. Plaintiffs allege that "Defendant has failed and continues to fail to provide voters with vision and print disabilities an opportunity to vote that is equal to the opportunity provided to other voters." Compl. ¶ 101. Although Plaintiffs do not use the term "solely," these allegations make clear that Defendant is discriminating against them only by reason of their disabilities. Adding the term solely would merely be a "[t]hreadbare recital" of a purported element of a Section 504 claim, which is not sufficient to state a claim, as opposed to the factual matter that Plaintiffs present, which is sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The applicable regulations implementing Section 504 specify what constitutes a violation of the requirement to provide equally effective communication, including that the failure is "solely because of" disability. Those regulations provide that a violation occurs when a covered entity fails to provide appropriate auxiliary aids "where a refusal to make such provision would discriminatorily impair or exclude the participation of [qualified persons with disabilities] in a program or activity receiving Federal financial assistance." 28 C.F.R. § 42.503(f). There is no higher pleading standard established for Section 504 claims.

Here, Plaintiffs' need for auxiliary aids is "solely because of" their vision and print disabilities. And Defendant's paper-based absentee ballot system excludes them from voting privately and independently "solely because of" their vision and print disabilities. Plaintiffs allege that they were excluded from "vot[ing] privately and independently by absentee ballot in 2020 . . . *because* Alabama relied exclusively on paper ballots for voters living in the U.S." Compl. ¶ 40 (emphasis added). Plaintiffs further allege that "*[b]ecause* Plaintiffs and other

Alabama voters who are blind or have print disabilities must rely on the assistance of another

person, they cannot vote secretly, privately, and independently using absentee ballots." *Id.* ¶ 47

(emphasis added). There is no evidence in the complaint or in reality that Plaintiffs' need for

accommodation or their inability to use paper ballots arises from any other basis.

## CONCLUSION

For the foregoing reasons, Defendant Merrill's Motion to Dismiss should be denied in its

entirety. If the Court grants any portion of Defendant's Motion, Plaintiffs respectfully request

leave to amend the Complaint to address any identified deficiency.

Respectfully submitted,

*/s/ William Van Der Pol*
William Van Der Pol
Alabama Disabilities Advocacy Program
2008 12th Street Tuscaloosa, AL 35401
(205) 348-4928 (phone)
wvanderpoljr@adap.ua.edu

Eve L. Hill*
Jason C. Harary*
Brown Goldstein & Levy
120 E. Baltimore Street, Suite 2500
Baltimore, MD 21202
(410) 962-1030 (phone)
(410) 385-0869 (fax)
ehill@browngold.com
jharary@browngold.com

Bradley Heard*
Ahmed Soussi*
Southern Poverty Law Center
150 E. Ponce de Leon Avenue, Suite 340
Decatur, GA 30030
(470) 521-6700 (phone)
bradley.heard@splcenter.org
ahmed.soussi@splcenter.org

*Admitted *Pro Hac Vice*

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 12, 2022, I electronically filed the foregoing with

the Clerk of the Court using the CM/ECF system which will send notification of such filing to all

attorneys of record.

_____*s/ Eve L. Hill*_____
Eve L. Hill