# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| THE NATIONAL FEDERATION OF THE BLIND OF ALABAMA, et al.,<br><br>*Plaintiffs*,<br><br>vs.<br><br>WES ALLEN, *in his official capacity as Secretary of State of Alabama*,<br><br>*Defendant*. | Case No. 2:22-cv-00721-CLM |

### SECRETARY ALLEN'S RESPONSE TO ORDER (DOC. 24)

This Court ordered the Secretary to "explain . . . how the state implements new voter initiatives and what impact that process has on the pending arguments." Doc. 24 at 1. There is no standardized way in which the State implements every new program; rather, it varies on a program-by-program basis. Regardless, the Secretary possesses no general authority that would allow him to commandeer local election officials' authority whenever the State implements a new program. And that the Legislature has in the past empowered the Secretary to oversee pilot projects for some new voting programs only underscores that such authority requires an express delegation. Accordingly, this brief reinforces the Secretary's standing arguments.

In Alabama's decentralized elections system, the Secretary plays a limited role. He does not, for example, register voters or count ballots; those tasks instead

fall to local election officials. *See* ALA. CODE §§ 17-3-1; 17-11-11; 17-12-6. Ultimately, the *enforcement* of voting laws in these contexts falls to these local official elections. Although the Secretary may "provide uniform guidance for election activities" as "the chief elections official[,]" ALA. CODE § 17-1-3, this general authority does not allow him to control local election officials or override their statutorily defined roles and thus provides no hook for standing here. *See* Doc. 22 at 5; *see also Support Working Animals, Inc. v. Governor of Fla.*, 8 F.4th 1198, 1205 (11th Cir. 2021) ("[A] plaintiff's injury isn't redressable by prospective relief where other state actors, who aren't parties to the litigation, would remain free and clear of any judgment and thus free to engage in the conduct that the plaintiffs say injures them."). Any authority the Secretary has to act beyond his limited role derives from the Legislature's specific grants of authority for each program or voting activity on a case-by-case basis. *See, e.g.*, ALA. CODE § 17-9-30(g) (authorizing the Secretary to issue photo voter identification cards).

Because the Secretary possesses no general authority to oversee the implementation of new voting programs, the Legislature has sometimes empowered the Secretary to implement a pilot project to test a new voting program before rolling it out statewide. *See, e.g.*, ALA. CODE § 17-7-27 (referencing a pilot project for electronic vote counting systems established by Ala. Act 91-562). Such pilot projects sometimes vest the Secretary with narrow authority to temporarily oversee counties

or municipalities that (voluntarily) opt into the pilot projects. This authority then expires or diminishes at the close of the project, frequently with the Legislature empowering local officials—such as AEMs or probate judges—to take up the responsibilities themselves. That the Legislature has seen it necessary to empower the Secretary in these instances underscores that he does not possess such authority otherwise.

In their motion-to-dismiss briefing, Plaintiffs referenced one such pilot project: the now-completed implementation of electronic vote counting systems. Doc. 18 at 15 (citing ALA. CODE §§ 17-7-20 *et seq.*). There, the Legislature empowered the Secretary to "implement a uniform system of electronic voting" through a pilot project, ALA. CODE § 17-7-27, and to accept counties' requests to participate in the resulting system, *id.* § 17-7-29. The scope of the Secretary's authority was limited, and the Legislature conferred no authority on the Secretary to compel local officials to act. In granting this specific authority to implement a pilot project, the Legislature did not displace local election official's general authority over elections. Indeed, the statute tasks counties and municipalities with the "procedure for implementation" of electronic vote counting systems in their jurisdictions. *See* ALA. CODE 17-7-21(a).

The Legislature's establishment of a pilot project for implementing electronic poll books provides additional support. There, the Legislature "authorized the

3

Secretary of State to implement a pilot project for the use of electronic poll books." ALA. ACT. No. 2016-317 (*codified as amended at* ALA. CODE § 17-4-2.1). Participation in the project was voluntary, ALA. ACT No. 2016-317 § 2(b), and the county or municipality—in accordance with local officials' general authority over elections—implemented the electronic poll books themselves upon acceptance to the project, *id.* (c). Then, the Legislature amended § 17-4-2.1 with Ala. Act No. 2017-340 to remove the Secretary's authority over the pilot project and to instead allow all counties and municipalities to adopt the use of electronic poll books themselves. The permanent program reduced the Secretary's authority to simply certifying that certain electronic poll books met statutory standards, ALA. CODE § 17-4-2.1(b), (c); providing guidance to county officials, *id.* (e); and authorizing the Secretary to use state funds to cover expenses of county commissions related to electronic poll books, *id.* (f). Again, no part of this scheme empowers the Secretary to require electronic poll book use by local election officials.

Other new programs have displayed similar deference to local election officials. For example, the Legislature recently "authorized the Secretary of State to conduct a one-time post-election audit after the November 8, 2022, general election to determine the accuracy or the originally reported outcome of the election." ALA. ACT No. 2021-446, *codified at* Ala. Code § 17-16-90. Though the Legislature empowered the Secretary to conduct the audit, counties' participation was voluntary,

and commencement was conditioned on the Secretary successfully petitioning the participating county's presiding circuit judge. ALA. CODE § 17-16-90(b)(2)–(4). Again, these limited and temporary grants of specific authority to the Secretary do not displace local officials' statutorily defined roles outside those limited and temporary circumstances.

The discussion above underscores the Secretary's previous standing arguments. Although the Legislature may temporarily give the Secretary narrow authority to test some new voting programs or implement others, the Secretary lacks a general authority to control local election officials' implementation of *all* voting programs. Plaintiffs' interest in a "standardized rollout" for their preferred remedy, Doc. 18 at 15, does not authorize this Court to redefine Secretary Allen's powers and his statutory relationship with local election officials. That's the Legislature's prerogative.

Plaintiffs thus lack standing because Secretary Allen does not control the non-party election officials who are necessary for relief here. Absentee election managers remain obligated to follow State law that prevents them from providing or counting electronic absentee ballots for non-UOCAVA voters. ALA. CODE §§ 17-11-5, -42; ALA. ADMIN CODE r. 820-2-10-.06(2)(a)(3)(b). *Jacobson* makes clear that Plaintiffs cannot establish standing without Secretary Allen's authority to bind these non-parties. *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1253–55 (11th Cir. 2020)

("Because the Supervisors are independent officials not subject to the Secretary's control, their actions to implement the ballot statute may not be imputed to the Secretary for purposes of establishing traceability."). Because Plaintiffs "have not prove[n] that . . . relief against the Secretary will 'significantly increase the likelihood' that [AEMs] will ignore state law and follow a federal decree that does not bind them[,]" *Jacobson*, 974 F.3d at 1255 (citing *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1301 (11th Cir. 2019) (en banc)), Plaintiffs have failed to allege facts that could establish redressability. They therefore lack standing.[1]

Respectfully submitted,

Steve Marshall
 *Attorney General*

James W. Davis (ASB-4063-I58J)
 *Deputy Attorney General*

s/Benjamin M. Seiss
A. Reid Harris (ASB-1624-D29X)
Brenton M. Smith (ASB-1656-X27Q)
Benjamin M. Seiss (ASB-2110-O00W)

---

[1] Plaintiffs are seemingly aware of this wrong-party problem. Plaintiff NFB of Alabama's sister organization, National Federation of the Blind of Texas, was a plaintiff in two Texas lawsuits that are similar to the present suit. *See Johnson v. Callanen*, No. 5:22-CV-00409 (W.D. Tex. 2022); *Semien v. Hughes*, No. 1:20-CV-00789 (W.D. Tex. 2020). *Johnson* is a suit against the Bexar County Elections Administrator. *Johnson*, No. SA-22-CV-00409-XR, 2022 WL 2541357 (W.D. Tex. July 7, 2022). *Semien* was a suit against the Texas Secretary of State. *Id.* at *2 n.9. There, the Texas Secretary filed a motion to dismiss arguing, *inter alia*, that "sovereign immunity barred the plaintiffs' claims against her because she lacked the authority to enforce the challenged provision." *Id.* (citation omitted). But before the district court had a chance to rule on the motion, the plaintiffs dismissed their suit. *Id.* (citation omitted). The *Semien* plaintiffs, represented by one of Plaintiffs' counsel here, appeared to recognize that the local election official was the proper party. So too here.

*Assistant Attorneys General*

OFFICE OF THE ATTORNEY GENERAL
501 Washington Avenue
Montgomery, Alabama 36130-0152
Telephone: 334.35.8674
Facsimile: 334.353.8400
Jim.Davis@AlabamaAG.gov
Reid.Harris@AlabamaAG.gov
Brenton.Smith@AlabamaAG.gov
Ben.Seiss@AlabamaAG.gov

***Counsel for Secretary Allen***

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 3, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

s/Benjamin M. Seiss
*Counsel for Secretary Allen*
