FILED
2023 Mar-15  PM 02:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

**THE NATIONAL FEDERATION
OF THE BLIND OF ALABAMA,
GAIL SMITH, JILL ROSSITER,
and ERIC PEEBLES,**
     Plaintiffs,

**v.**

**WES ALLEN** *in his official
capacity as Secretary of State
of Alabama,*
     Defendant.

**Case No. 2:22-cv-721-CLM**

## MEMORANDUM OPINION

This case is about who gets to cast absentee votes electronically, rather than by filling out paper ballots and envelopes. Alabama law allows overseas voters to choose between paper or electronic absentee ballots. Plaintiffs, who are blind or have print disabilities, allege that Alabama's Secretary of State must extend that statutory privilege to them too.

But the Alabama Legislature has not given the Secretary of State the power to expand electronic absentee voting to domestic voters, nor is the Secretary in charge of distributing and collecting absentee ballots. So the court finds that Plaintiffs lack standing, and will thus **GRANT** the Secretary's Motion to Dismiss their lawsuit. (Doc. 13).

### BACKGROUND

Alabama provides blind voters and voters with print disabilities with electronic machines and other auxiliary aids when they vote in person. But the same voters must use paper ballots and envelopes when voting from home. The court says "must" because Alabama law requires paper ballots for *all* absentee voters, except certain overseas voters.

### A. Alabama's Absentee Voting Laws

Title 17, Chapter 11 of the Alabama Code governs absentee voting. It has two articles: Article 1 provides the general rules for absentee voting, while Article 2 creates a committee to determine whether the State can provide secure electronic voting for overseas voters (as required by Congress).

The court discusses both articles below, focusing on two questions. First, which absentee voters can legally cast an electronic ballot? Second, who has the authority to implement absentee voting: the Secretary of State or county Absentee Election Managers?

- Article 1: General Provisions (Ala. Code § 17-11-1, *et seq*)

Article 1 says that "[a]ny qualified elector" may vote absentee if he fits within one of ten listed categories. Ala. Code §§ 17-11-3(a) (listing nine categories); 17-11-3.1 (listing the tenth). Voters with "any physical illness or infirmity which prevents [their] attendance at the polls," Ala. Code § 17-11-3(a)(2), or any "permanent disability preventing [their] attendance at the polls" Ala. Code. § 17-11-3.1(a), are among those allowed to vote absentee.

The Legislature gave absentee voters three ways to "apply for and vote an absentee ballot[:] by mail, by hand delivery or by commercial carrier." Ala. Code § 17-11-3(a). These limited delivery methods—by mail, carrier, or hand delivery—suggest that the "absentee ballot" is a physical document. That suggestion is confirmed by the provision that says absentee ballots "shall have printed thereon the words, 'Official Absentee Ballot,'" Ala. Code § 17-11-6, and an earlier provision that governs the printing of all ballots (not just absentee) that says, "[t]here shall be printed on each absentee ballot and ballot for precinct ballot counters the ballot style number." Ala. Code § 17-6-26(a).

The Legislature divided the responsibility for dealing with the physical absentee ballots between two government officials: the Secretary of State and the county's Absentee Election Manager (AEM). The Secretary's primary role is to adopt standard rules for the distribution of absentee applications and ballots. *See* Ala. Code § 17-11-3(a) (making the Secretary responsible for rules for the first nine categories of absentee voters); Ala. Code. § 17-11-3.1(b)

(making the Secretary responsible for rules voters with permanent disabilities). The county AEM handles the applications and ballots.

For example, Section 17-11-4 requires the Secretary to design a standard application for absentee ballots that "shall be used throughout the state." The AEMs are charged with distributing and collecting these applications at the county level. *Id*. The AEM, not the Secretary, is then responsible for giving an absentee ballot to anyone who files an application and appears on the state voter registration list. Ala. Code § 17-11-5. Again, that ballot is on paper. Ala. Code §§ 17-6-26; 17-11-6.

Along with the paper ballot, the Legislature requires the AEM to also give absentee voters three envelopes for returning the ballot: one for secrecy, one for an affidavit, and one for return shipping. Ala. Code § 17-11-9. Once he receives these materials, the absentee voter must complete these steps:

- Open the envelope and identify the ballot, the "secrecy" envelope, the "affidavit" envelope, and the "outer" return envelope;
- Read the ballot and fill it out by hand using a pen;
- Place and seal the completed ballot inside the "secrecy" envelope;
- Place the "secrecy" envelope inside the "affidavit" envelope;
- Seal the "affidavit" envelope and complete the affidavit printed on the outside; and, then
- Sign the affidavit and have the signature witnessed by either a notary public or two witnesses 18 years or older.

The absentee voter then has two choices for how to return the sealed ballot and affidavit envelope "to the absentee election manager": the voter can either (a) place the materials in the preaddressed outer envelope and "forward it to the United States mail," or (b) "hand it to him or her in person." *Id*.

- Article 2: Overseas Absentee Voting (Ala. Code § 17-11-40, *et seq*)

In 2009, Congress amended the Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA) to require States to establish procedures allowing military and overseas voters to vote either electronically or by mail. *See* Pub. L. 111-84, Subtitle H, § 578. Two years later, the Alabama Legislature created a committee "to determine whether a secure electronic means may be established for use by the Secretary of State to conduct overseas absentee voting." Ala. Act 2011-619. That 2011 Act is codified as Article 2 of the chapter on absentee voting. *See* Ala. Code § 17-11-40, *et seq*.

Both the Secretary and a representative of the Circuit Clerks Association [*i.e.*, the AEMs] were placed on the 13-member Electronic Overseas Voting Advisory Committee. Ala. Code § 17-11-41. If the Committee determined that secure electronic voting was possible for overseas voters—and it did—then the Committee had to propose rules for the Secretary to promulgate. *Id*.

While the Legislature gave the Secretary the responsibility for promulgating the Committee's suggested rules for overseas electronic voting, the Legislature kept responsibility for handling applications, ballots, and voter qualification in the AEMs' hands:

> The Joint Committee on Administrative Regulation Review, after review, shall return the proposed rules, with comments, to the Secretary of State. The Secretary of State shall proceed to adopt a rule pursuant to the Alabama Administrative Procedure Act. The rules for conducting overseas absentee voting by secure remote electronic transmission shall authorize the absentee election manager, as defined in Section 17-11-2, to accept requests for absentee ballots and voted absentee ballots from overseas voters and provide a process for verifying the identity of a voter, ensuring the security of the transmission, accepting a voted ballot, and recording each ballot received.

*Id*. Consistent with that division of power, the Legislature tasked the Secretary with creating rules that ensure military and overseas voters can apply to vote consistent with UOCAVA, 52 U.S.C. § 20302, and requires the AEMs to

"provide an absentee ballot to the military and overseas voters for each subsequent election." Ala. Code § 17-11-5(d). The AEMs have to report to the Secretary how many ballots they mailed out and received back. *Id.*

The regulations that carry out Article 2 comply with this legislative division of authority. *See* Ala. Admin. Code r. 820-2-10 (procedures for implementing UOCAVA). The regulations limit the absentee voters who can vote electronically to three categories: (1) active duty military and their spouses who are overseas; (2) members of the Merchant Marines and their spouses who are overseas; and (3) other Alabama citizens who are registered and qualified to vote in Alabama but are "temporarily residing" residing out of the country. Ala. Admin. Code r. 820-2-10-.06(2)(a). Those voters submit their application for an absentee ballot to the AEMs in their home county. Ala. Admin. Code r. 820-2-10-.03(1).

The AEMs, not the Secretary, must determine whether the applicants fit within the groups of voters eligible to vote electronically. Ala. Admin. Code r. 820-2-10-.06(2)(b). The regulations also give the AEMs, not the Secretary, the authority to deny a request to vote electronically. Ala. Admin. Code r. 820-2-10-.06(2)(b)(3). The regulations then say that the voter "may choose to return the voted ballot and completed Overseas Voter Certificate via secure electronic transmission to the local absentee election manager." Ala. Admin. Code r. 820-2-10-.06(2)(d). Finally, the regulation says that the AEMs, not the Secretary, determine whether the electronic ballot was properly submitted. Ala. Admin. Code r. 820-2-10-.06(2)(e).

—

In short, Alabama law does not allow domestic voters to submit electronic absentee ballots; they must use paper ballots. Only certain military and overseas voters can vote electronically. When they do, the AEMs, not the Secretary, process their applications and electronic ballots.

## B. The Lawsuit

Plaintiffs Gail Smith and Jill Rossiter are blind, and Plaintiff Eric Peebles has a print disability.[1] Each is registered to vote in Alabama, eligible to vote absentee, and prefers to vote absentee in future elections. Because of their disabilities, these plaintiffs cannot use paper absentee ballots without help from a third party. Which, in turn, means that they cannot vote privately and independently when they vote absentee.

The National Federation of the Blind of Alabama ("NFB-AL") is a nonprofit organization comprised of blind Alabama residents, and their families and friends. NFB-AL has many blind members, including Gail Smith and Jill Rossiter, who are registered to vote in Alabama, are eligible to vote absentee, and wish to vote in upcoming elections by casting absentee ballots electronically. NFB-AL sues on behalf of itself and its members.

Plaintiffs sued the Secretary of State, currently Wes Allen.[2] (Doc. 1). Their primary contention is that, by failing to provide domestic voters who are blind or print disabled with a remote accessible vote-by-mail system like the one offered to overseas voters, the Secretary has violated two provisions of federal law: (1) Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131–12134; and (2) Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, *et seq.* (*See* Doc. 1, pp. 13–19).

As relief, Plaintiffs ask this court to (1) permanently enjoin the Secretary from violating the ADA and Section 504 by requiring the Secretary to implement a remote accessible vote-by-mail system, including electronic delivery and return of ballots, for people with vision and print disabilities for all future elections; (2) declare that the Secretary has and continues to violate the ADA and Section 504 by failing to offer accessible electronic ballots to

---

[1] Plaintiffs define "blind" to include all persons with a vision impairment that substantially limits the major life activity of seeing. (*See* Doc. 1, p. 1 n.1). They define "print disability" as all disabilities that interfere with a person's ability to read, mark, and handle paper documents, including vision disabilities, manual dexterity disabilities such as cerebral palsy, and other physical disabilities such as quadriplegia. (*See* Doc. 1, p. 1 n.2).

[2] Plaintiffs sued John H. Merrill, who was Secretary of State at the time. Wes Allen replaced Merrill as Secretary of State on February 16, 2023. Under Federal Rule of Civil Procedure 25(d), the court directed the Clerk of Court to substitute Allen for Merrill. (*See* Doc. 24).

voters with vision and print disabilities who are eligible to vote absentee; (3) award of Plaintiffs' reasonable attorney's fees, litigation expenses, and costs; and (4) issue other relief as the court may deem just and proper. (*See* Doc. 12, pp. 19–20). The Secretary has moved to dismiss their complaint. (Doc. 13).

## DISCUSSION

The Secretary says that dismissal is warranted for two reasons: (1) the Plaintiffs lack standing, and (2) the Plaintiffs fail to state a viable claim. (*See* Doc. 13). "Because standing to sue implicates jurisdiction, a court must satisfy itself that the plaintiff has standing before proceeding to consider the merits" of a claim. *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1296 (11th Cir. 2019). So the court considers the standing argument first.

Article III of the Constitution limits federal courts' jurisdiction to "Cases" and "Controversies," *see TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021), thereby "confin[ing] the federal courts to a properly judicial role." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "To have a case or controversy, a litigant must establish that he has standing." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245 (11th Cir. 2020) (quoting *United States v. Amodeo*, 916 F.3d 967, 971 (11th Cir. 2019)).

To show standing, a Plaintiff must prove three elements: (1) he suffered an injury in fact; (2) the defendant caused that injury; and (3) a favorable decision will likely redress it. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation." *Id.* (citation omitted).

The Secretary agrees that Plaintiffs have pleaded an injury in fact. (*See* Doc. 13, p. 1; Doc. 18, pp. 9–10). But the Secretary argues that Plaintiffs' injuries are neither traceable to, nor redressable by, the Secretary. (*Id.*). As explained below, the Secretary is right on both counts.

**A. Plaintiffs' injuries are not traceable to the Secretary.**

"To satisfy the causation requirement of standing, a plaintiff's injury must be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1253 (11th Cir. 2020) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "[F]or purposes of traceability, the relevant inquiry is whether the plaintiffs' injury can be traced to 'allegedly unlawful conduct' of the defendant, not to the provision of law that is challenged." *Collins v. Yellen*, 141 S. Ct. 1761, 1779 (2021) (citation omitted).

Plaintiffs contend that they are injured because blind voters and voters with print disabilities cannot cast absentee ballots electronically. But even if they're right, their injury—*i.e.*, the inability to vote from home electronically—is traceable to third parties, not the Secretary.

1. <u>The Legislature</u>: The Alabama Legislature, not the Secretary, passed the laws that require domestic absentee voters to submit paper ballots and envelopes. The Alabama Legislature, not the Secretary, then passed the law that opened up electronic absentee voting for certain overseas voters to comply with a Congressional mandate.

Neither set of laws gives the Secretary the authority to promulgate rules to provide an electronic voting option to *any* domestic voters, including blind voters and voters with print disabilities. Instead, the Legislature gave the Secretary the limited authority to promulgate rules that would provide an electronic absentee voting option only to "eligible overseas voters," and only "[i]f the [Alabama Electronic Overseas Voting Advisory Committee] determines" that "a secure electronic means" can be established. *See* Ala. Code. § 17-11-42(a).

Section 17-11-42(a) provides in relevant part:

If the committee determines a secure electronic means may be established for conducting overseas absentee voting, the Secretary of State shall promulgate rules proposed by the committee to provide that option to eligible overseas voters. The Secretary of State may veto any rule proposed by the committee, may resubmit

any vetoed proposed rule to the committee, and may provide an alternative rule for consideration by the committee.

So the Secretary has authority to "promulgate rules" to provide an electronic voting option to "eligible overseas voters." But the Secretary lacks authority to promulgate rules to provide an electronic voting option to anyone *other than* "eligible overseas voters." And the Secretary cannot promulgate regulations without the Committee first proposing them.

In short, Plaintiffs' inability to cast electronic absentee ballots traces to the Alabama Legislature, not the Secretary of State. The Secretary can only act within the scope of his statutorily defined rulemaking authority. And the Legislature has not given the Secretary the authority to create rules—much less provide actual electronic ballots—to Plaintiffs.

2. The AEMs: Assuming that state law could be read or tweaked to allow domestic absentee voters to cast electronic ballots, Plaintiffs' injury would trace to AEMs rather than the Secretary.

Article 1 provides that AEMs, not the Secretary, must furnish absentee ballots to eligible voters. *See* Ala. Code. § 17-11-5. And Article 1 gives AEMs two options for delivering absentee ballots:

> (1) Forwarding it by United States mail to the applicant's or voter's residence address or, upon written request of the voter, to the address where the voter regularly receives mail; or (2) by handing the absentee ballot to the applicant in person or, in the case of emergency voting when the applicant requires medical treatment, his or her designee in person.

Ala. Code. § 17-11-5(a). So—putting aside that AEMs lack the authority to provide electronic ballots to domestic absentee voters—if Plaintiffs' injury (*i.e.*, the failure to receive and submit electronic ballots) is traceable to any official, it's the county AEM, not the Secretary.

Article 2 leads to the same conclusion. When it comes to overseas voters, AEMs, not the Secretary, "accept requests for [electronic] absentee ballots" and "provide a process for . . . accepting a voted [electronic absentee] ballot." Ala.

Code. § 17-11-42(a). AEMs, not the Secretary, "shall determine the eligibility of the absentee voter to return the absentee ballot by electronic transmission by evaluating the absentee ballot of said voter." Ala. Admin. Code. R. 820-2-10.06(2)(a)(3)(b). And AEMs, not the Secretary, receive and count the ballots. Ala. Admin. Code. R. 820-2-10.06(2)(a)(3)(d, e). So—again putting aside that no one has authority to provide electronic ballots to domestic absentee voters—if Plaintiffs' injury (*i.e.*, the failure to be offered the same ballots as overseas voters) is traceable to any official, it's the county AEM, not the Secretary.

3. <u>Plaintiffs' Argument</u>: Plaintiffs try to overcome their traceability problem by arguing that the Secretary has "rule making authority," Ala. Code. § 17-1-3, and he oversees the implementation of the absentee voting program. (Doc. 27, pp. 2–3). But the Legislature has not given the Secretary as much latitude as Plaintiffs allege. Yes, Article 1 permits the Secretary to promulgate rules that allow eligible absentee voters to cast their ballots. *See* Ala. Code. § 17-11-3. But the same provision limits how most absentee voters may "apply for and vote an absentee ballot." *Id.* The only options are to vote "by mail, by hand delivery, or by commercial carrier." *Id.* So while the Secretary has some authority to implement the absentee voting program, his authority is limited by legislative directives. To date, the Legislature has only given overseas voters the possibility of voting absentee with electronic ballots. And the Legislature gave AEMs, not the Secretary, the authority to accept requests for those ballots and to accept the return of those ballots.

—

To sum up, Plaintiffs allege that the Secretary must provide and accept electronic ballots from certain domestic absentee voters. But the Legislature has given no one that power. And if that power existed, it would belong to AEMs, not the Secretary. Either way, Plaintiffs' alleged injury does not trace to the Secretary. As a result, Plaintiffs lack standing. *Jacobson*, 974 F.3d at 1253; *Lewis v. Governor of Ala.*, 994 F.3d 1287, 1301 (11th Cir. 2019) (en banc).

**B. A favorable decision is unlikely to redress Plaintiffs' injuries.**

Even if Plaintiffs could establish traceability, they lack standing because a favorable decision is unlikely to redress their injuries.

When assessing redressability, courts must ask "whether a decision in plaintiff's favor would 'significant[ly] increase . . . the likelihood' that they would "obtain relief that directly redresses the injury" that they claim to have suffered. *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1301 (11th Cir. 2019) (quoting *Harrell v. Fla. Bar*, 608 F.3d 1241, 1260 n.7 (11th Cir. 2010)). Additionally, "it must be *the effect of the court's judgment on the defendant—* not an absent third party—that redresses the plaintiff's injury, whether directly or indirectly." *Lewis*, 944 F.3d at 1301 (internal quotation marks omitted).

Let's assume that this court granted Plaintiffs' requested relief and issued an order declaring that the Secretary is violating the ADA, enjoining him from continuing that violation, and forcing him to expand his rules for electronic absentee voting to domestic voters with visual impairments. (*See* Doc. 1, pp. 19–20 (requested relief)). Nothing requires the AEMs to disregard Alabama law, which requires domestic absentee voters to use paper ballots, in favor of the Secretary's rules that implement this court's order.

Again, the AEMs, not the Secretary, are in charge of administering absentee ballots—paper or electronic. *See* Ala. Code §§ 17-11-5(d); 17-11-41; Ala. Admin. Code r. 820-2-10-.06. And the AEMs "remain lawfully entitled" to limit electronic ballot access to the groups named by the Alabama Legislature "unless and until they are made parties to a judicial proceeding that determines otherwise." *Jacobson*, 974 F.3d at 1254. Whatever "persuasive effect" this court's order and the Secretary's rules might have on the AEMs "cannot suffice to establish redressability." *Id.* Only their presence as parties would give this court the power to bind them.

In short, Plaintiffs fail to show redressability because third parties, not the defendant Secretary, would have to implement Plaintiffs' requested relief. As a result, they lack standing.

### CONCLUSION

This court lacks jurisdiction over Plaintiffs' case. So the court **GRANTS** the Secretary's Motion to Dismiss (doc. 13) and will enter a separate order that **DISMISSES** all claims against the Secretary and closes this case.

**DONE** on March 15, 2023.

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE